## The Norfolk and Western Railroad Company *vs.* William Hoover.

*Master and Servant—Injury to Fellow servant—Negligence of Fellow servant—Evidence—Negligence of Master—Instruction—Evidence of Incorporation of Defendant—Practice in Court of Appeals.*

Where a servant sues his master for injuries resulting from the negligence of a fellow servant, the plaintiff, to succeed, must prove not only that some negligence of the fellow servant caused the injury, but also that the master had himself been guilty of negligence, either in the selection of the negligent fellow servant in the first instance, or in retaining him in his service afterwards.

The master owes to each of his servants the duty of using reasonable care and caution in the selection of competent fellow servants, and in the retention in his service of none but those who are. If he does not perform this duty, and an injury is occasioned by the negligence of an incompetent or careless servant, the master is responsible to the injured employé, not for the mere negligent act or omission of the incompetent or careless servant, but for his own negligence in not discharging his own duty towards the injured servant.

Where the engineer of a railroad company was injured through the negligence of drunken brakemen, it is incumbent on the engineer to show, in an action against the company, not only the employment of the brakemen, but that the company had not used due and ordinary care in selecting them. And as tending to establish this latter fact it was competent for him to ask a witness whether he knew the general reputation of the brakemen for sobriety for one or two years before the accident and following it, and, if so, to state what that reputation was.

If the evidence elicited under this inquiry, was such, if credited by the jury, as to establish a general reputation for intemperance as to one of the brakemen, covering many years, uninterruptedly, and of such a notorious character that a jury might well have inferred it was known to the defendant when he was employed, or else that the defendant failed to know it only because of neglecting to make proper inquiry, such evidence was legally sufficient to go to the jury upon the subject of the defendant's negligence.

Norfolk and Western Railroad Co. *vs.* Hoover.

If the brakemen were employed and sent out upon the train in question by S. who was a mere train dispatcher of the company, with power to employ and discharge flagmen and brakemen, and having general charge of the trainmen of the first division of the road, and the movement of trains thereon; and if S. was employed by the division superintendent, who had the general management of the division; and if the engineer and firemen were also under the instructions of the division superintendent, then S. could not be treated as any more than a fellow servant with the plaintiff. And even if S. had been negligent in sending out the brakemen, and that negligence caused the injury sued for, still the plaintiff could not recover unless the company had not used due care in the selection of S.

It is the negligence of a fellow servant, and the additional negligence of the master in employing that servant, whose negligence actually caused the injury, which must concur before a plaintiff can recover in a case of this character.

And an instruction upon this point offered by the plaintiff, which failed to restrict the negligence of the defendant in selecting the plaintiff's fellow servants, to the selection of such of them as by their incompetency, growing out of their intemperance, actually caused the injury, was wrong.

Where the incorporation of the defendant is averred in the declaration and is not denied by the pleas, that fact, under section 108 of Article 75 of the Code, must be taken to be admitted.

The objection that there is no evidence to support the hypothesis of a prayer, cannot be considered on appeal, unless a special exception based upon that objection, signed and sealed by the Judge, appears in the record.

APPEAL from the Circuit Court for Washington County.

The case is stated in the opinion of the Court.

*Defendant's First Exception*—Stated in the opinion of the Court.

*Defendant's Second Exception.*—The plaintiff at the close of the evidence offered the seven prayers following, and a sixth prayer, which was withdrawn:

1. That if the jury shall find from the evidence that the plaintiff was, during the spring or early summer of the

year 1891, an employé of the defendants as an engineer or engineman, and working as such upon defendants' cars or trains of cars, and that said defendants at that time were the owners and operators of a railroad between the towns or cities of Hagerstown, Maryland, and Roanoke, Virginia, and that said railroad was of heavy and difficult grade for a great part of the length thereof, and that said defendants used for the transportation and conveyance of the burden and loaded cars over said road and down the grades thereof, a steam engine or engines, and that said plaintiff, so being employed as an engineer as aforesaid, in the month of May, or near thereto, of the year 1891, was, together with other employés or operatives of the defendants, ordered and required by a train master or superintendent, whose orders and directions said hands or employés were required to observe and obey, to run and convey a train of heavily loaded burden cars over said road from Shenandoah City to Hagerstown, and that in attempting so to convey and conduct said train of cars so loaded, over and down a long and heavy grade on said road for several miles, the same ran off with great speed, notwithstanding the plaintiff used all the diligence of which he was capable, and made every effort to check and control said cars, and that said plaintiff afterwards, and while said cars were running with great speed, in attempting to escape therefrom, was seriously and dangerously injured, and that without negligence or want of caution on his part, then, if said injury to the plaintiff was caused by the want of ordinary skill and experience or other unfitness on the part of the other hands, or any of them, in charge of said train, to manage and conduct the same, by reason of the intemperate state or condition of either of them, the plaintiff himself using all the diligence of which he was capable in that behalf, the plaintiff is entitled to recover, provided the jury further find from the evidence that the defendants did not use reasonable care in the selection and

employment of the brakemen or other hands or employés engaged with the plaintiff in conducting said cars.

2. That if the jury believe from the evidence, that at the time the plaintiff received the injury sued for, such injury was caused by the neglect of operatives employed upon the same train with the plaintiff, and that said operatives (any or all of them) were in an unfit condition to perform safely and properly the duties of their positions by reason of being ordered or notified by the defendants or any of their agents or officers, whose orders and directions it was the duty of said operatives to obey, to perform the labor of conveying and conducting the train of cars on which plaintiff was engineer when hurt, from Shenandoah City to Hagerstown, after that said operatives had already labored the whole day as such on another of defendants' trains running from Hagerstown to Shenandoah City, and were by reason of such labor worn out and much fatigued, or so much in need of rest and sleep as to be disqualified for properly performing the duties of their positions, either at the time the train on which plaintiff was engineer left Shenandoah City, or at the time when plaintiff was hurt, then the plaintiff is entitled to recover.

3. That if the jury believe from the evidence, that at the time the plaintiff suffered the injury complained of, the defendants had wrongfully and unjustifiably enhanced the risk to which the plaintiff was exposed beyond the natural risk of the employment, by knowingly or negligently employing incompetent or unfit and untrustworthy servants or retaining the same, or by an unreasonable order, the enforcement of which was dangerous to the plaintiff, said plaintiff being without blame, then their verdict should be for the plaintiff.

4. That if the jury believe from the evidence, that at the time the plaintiff suffered the injury sued for, such injury was caused by the neglect or unfitness of one or both the brakemen, whose duty it was to apply the brakes and

hold the train on which plaintiff was engineer, and acting as such when hurt; and if they further believe that either or both of said brakemen, at the time when they were employed by defendants, had the reputation of being grossly intemperate and addicted to the use of intoxicating liquors, or if the jury believe that the injury complained of resulted in whole or in part from the omission of the defendants or their chief dispatcher to do anything which ought reasonably to have been done to prevent casualty, then the verdict should be for the plaintiff; provided they also find that the plaintiff himself used reasonable care, and was blameless.

5. That if the jury find from the evidence, that the plaintiff was injured as hereinbefore stated, and that such injury resulted from the negligence of defendant's train-master, and that said train-master had full control over the movements of the train on which plaintiff was at the time of the collision, if any occurred, and did actually direct and control the movements of said train, and that he had general power to employ and discharge men in defendants' employ, working in the same capacity in which plaintiff was then working, in that case the negligence of the train-master would be deemed the negligence of the defendant.

7. That what is ordinary care must be measured by the character and risks and exposures of the business, and the degree required is higher where life or limb is endangered than in other cases.

8. That if the jury find for the plaintiff, in estimating the damages they are at liberty to consider the health and condition of the plaintiff before the injury complained of, as compared with his present condition in consequence of such injury, and whether the said injury or injuries are in their nature permanent, and how far they are calculated to disable the plaintiff from engaging in those pursuits and employments for which, in the absence of said injury or injuries, he would have been qualified, and also the physical

and mental suffering to which he was subjected by reason of said injury, and to allow such damages as in the opinion of the jury will be a fair and just compensation for the injury which they may find the plaintiff has sustained.

The defendant offered the six prayers following:

1. That no evidence has been given legally sufficient to enable the plaintiff to recover under the pleadings in the cause, and the verdict should be for the defendant.

2. That if the jury find that the accident to the train and the injury to the plaintiff sued for in this action was caused by the intoxication or negligence of the brakemen, Huyett and Reese, or either of them, and that said brakemen were employed by Shull, the train dispatcher of the defendant, and sent out by him as brakemen on the train on which the plaintiff was injured; and further find that said Shull was guilty of negligence in the sending out of said Huyett and Reese, or either of them, as brakemen on the train aforesaid; yet the jury are further instructed that Shull and the plaintiff were co-employés of the defendant in the sending out of said brakemen, and the defendant is not responsible to the plaintiff for the neglect or want of care of the said Shull, unless they shall further find that there was negligence on the part of the defendant in the employment of Shull, and there is no legally sufficient evidence in the cause from which the jury can so find.

3. That unless the jury find that the brakeman, Huyett, was intoxicated at the time of the accident and injury complained of, and that his negligence, by reason of such intoxication, produced or contributed to the accident and injury of the plaintiff, then the evidence given by the plaintiff by witnesses that the general reputation of Huyett for sobriety was bad among those who knew him, is not relevant to the issues in this action and cannot be considered by the jury, unless such reputation was brought home to the knowledge of the defendant before the accident,

Norfolk and Western Railroad Co. *vs.* Hoover.

and there is no evidence of any such knowledge on the part of the defendant.

4. That the jury are not at liberty to consider in this case the general reputation of the brakeman, Huyett, for drunkenness, as given in evidence by plaintiff's witnesses, because there is no evidence that such reputation was ever brought to the knowledge of the company defendant, or its employé, Shull, before the accident complained of.

5. That, although the jury may find from the evidence that the injuries to the plaintiff were caused by the negligence of the brakemen on the train, yet the plaintiff is not entitled to recover in this action without showing that defendant did not use reasonable care in procuring faithful and competent employés for its operation, and in this case the plaintiff has offered no evidence to show that such reasonable care was not used by the defendant, and therefore their verdict must be for the defendant, if they find that at the time of the injuries to the plaintiff he was in the employment of the defendant as engineer of the train on which said brakemen were his co-employés.

6. That no evidence has been given of the incorporation of the defendant as charged in the plaintiff's declaration, and therefore, under the pleadings and evidence in the cause, the plaintiff cannot recover.

The Court ( STAKE, J.,) granted the first, seventh and eighth prayers of the plaintiff ( the sixth being withdrawn), and rejected the others, and granted the third prayer of the defendant, and rejected the others. The defendant excepted.

The plaintiff excepted to the rejection of his second, third, fourth and fifth prayers, as also to the granting of the defendant's third prayer.

The verdict and judgment being for the plaintiff, the defendant appealed.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, PAGE, ROBERTS, MCSHERRY, BOYD and BRISCOE, J.

*Hy. Kyd Douglas,* for the appellant.

*M. L. Keedy,* (with whom was *W. C. Griffith,* on the brief,) for the appellee.

McSHERRY, J., delivered the opinion of the Court.

This is an action brought to recover damages for personal injuries received by the appellee, an employé of the Norfolk and Western Railroad Company, as the result of alleged negligence on the part of his fellow-servants. The verdict and judgment were in his favor, and the Company has appealed. In the record there are three bills of exception upon which the questions to be considered arise. Two of these exceptions were reserved by the appellant and one by the appellee.

It appears that in May, 1891, an extra train of loaded freight cars was started from Shenandoah, Virginia, about eleven-thirty p. m., to run through to Hagerstown, Maryland. The crew consisted of a conductor, an engineman, a fireman, a flagman and two brakemen. Hoover, the appellee, was the engineman. As the train proceeded northward, it descended some heavy grades, and the engineman noticed that its speed was not kept under proper control by the brakemen. At Luray the train laid over for an hour, and the engineman requested the brakemen not to let him down the hills so rapidly, as the night was quite foggy. After leaving Luray they ascended the grade to Vaughn's Summit, turning that point at a speed of about ten miles an hour. Immediately upon passing the Summit, the appellee shut off the steam so that the train might descend by gravity alone, without aid from the engine. When about a train's length over the hill he discovered that the train was increasing its speed, and he applied the tank brake; but this producing no effect, he blew for brakes, turned on the driver brakes and applied sand to the track.

Norfolk and Western Railroad Co. *vs.* Hoover.

This not checking the train, he again blew for brakes and reversed his engine. He repeated his signals for brakes at least once, and probably twice, afterwards, but they seem not to have been heeded by the brakemen, for the train moved rapidly onward down the grade. The packing blew out of the cylinder, and this caused the train to plunge forward, throwing the appellee back into the tender. At this juncture, as they were rapidly approaching, and were only some ten or twelve car-lengths distant from, Possum Hollow, which is crossed upon a trestle seventy-five or eighty feet high, the appellee saw that a collision with another freight train standing, or moving very slowly northward, on the trestle, was imminent and unavoidable; and to save himself, jumped from his engine and received the injuries for which he has brought the pending suit. There was evidence offered tending to prove that Huyett, one of the brakemen, had been drinking that night before the accident happened; and within thirty minutes prior to the collision his breath gave unmistakable evidence of it. In this state of the proof, a witness was asked whether he knew the general reputation of Huyett and Reese, the two brakemen, for sobriety for one or two years before the accident and following that; and if so, to state what that reputation was. To this question and the evidence sought to be elicited thereby, the appellant objected, but the Court permitted the question to be asked and answered, and this ruling forms the subject of the first exception.

It has been repeatedly held by this Court, and is the settled and established doctrine of Maryland, that in actions of this character, where a servant sues his master for injuries resulting from the negligence of a fellow-servant, the plaintiff, to succeed, must prove, not only that some negligence of the fellow-servant caused the injury, but also that the master had himself been guilty of negligence, either in the selection of the negligent fellow-servant in the first instance, or in retaining him in his service afterwards.

Mere negligence on the part of the fellow-servant, though resulting in an injury, will not suffice to support the action, because the master does not insure one employé against the carelessness of another. But he owes to each of his servants the duty of using reasonable care and caution in the selection of competent fellow-servants, and in the retention in his service of none but those who are. If he does not perform this duty, and an injury is occasioned by the negligence of an incompetent or careless servant, the master is responsible to the injured employé, not for the mere negligent act or omission of the incompetent or careless servant, but for his own negligence in not discharging his own duty towards the injured servant. As this negligence of the master must be proved, it may be proved like any other fact, either by direct evidence or by the proof of circumstances from which its existence may, as a conclusion of fact, be fairly and reasonably inferred. That drunkenness on the part of a railroad employé renders him an incompetent servant will scarcely be disputed; nor can it be questioned that a master who knowingly employs such a servant, or who, knowing his habits, retains him in his service, would be guilty of a reckless and wanton breach of duty, not only to the public, but to every employé in his service. There is no evidence in the record, nor has there been a suggestion, that either the conductor, fireman or flagman of the train was negligent or incompetent. The negligence which directly caused the accident is attributed solely to the brakemen; and the appellant's negligence which, as it is claimed, fixes its liability, lies in its employment of, or continuing to retain in its service, these dissipated or intemperate brakemen. But, as we have stated, it was necessary for the plaintiff to show not only their employment, but that the company had not used due and ordinary care in selecting them. There was no direct evidence adduced to show the absence of such care; but the question excepted to, and the evidence elicited in response

to it, were designed to show by indirect or circumstantial evidence that the company had not used the degree of care and caution in the selection of these brakemen that its duty imperatively required it to use. So the question is, can you fix upon the master a failure to use due care in selecting careful servants by showing such notorious or general reputation respecting the servant's unfitness or incompetency as that the master could not, without negligence on his part, have been ignorant of it when he employed the servant? About this there ought to be no difficulty. If the servant's general reputation before employment is so notorious as to unfitness as that it must have been known to the master but for his the master's negligence in not informing himself—if he could have been ignorant of it only because he failed to make investigation— then, it is obvious that he has not used the care and caution which the law demands of him in selecting his employés. Hence, "the servant's general reputation for unfitness may be sufficient to overcome the presumption that the master used due care in his selection, even though actual knowledge of such reputation for unfitness on the master's part is not shown." *Wood, Mas. and Ser., sec.* 420. In *Davis vs. The Detroit & Milwaukee R. R. Co.,* 20 *Mich.,* 124, COOLEY, J., speaking for the Court, adopts the case of *Gilman vs. Eastern Railroad Corporation,* 10 *Allen,* 233, which puts upon the employer the responsibility of negligently employing an unfit person, generally known and reputed to be such, notwithstanding the employer may in fact have been ignorant of such unfitness. Continuing, he said: "The ignorance itself is negligence in a case in which any proper enquiry would have obtained the necessary information, and where the duty to enquire was plainly imperative." So in *Hilts vs. Chicago & Grand Trunk Ry.,* 55 *Mich.,* 437, where a track hand was killed by an engine backing rapidly along a switch, and the engineman was drunk, the Court said: "When, how-

ever, as in this case, it is shown that the accident occurred through the negligent act of the servant, who was in an intoxicated condition, and when it was shown further that he was in the habit of drinking intoxicating liquors to excess, and such habit had extended over a period of nine months while in defendant's employ, and no actual knowledge or notice ever reached any superior officer of the engineer, we think the jury may be justified in concluding from such evidence that the defendant was negligent in failing to learn such habit, and in retaining the engineer in its employment." See also, *Gilman vs. Eastern Railroad Co.*, 13 *Allen*, 433; *Wright vs. New York Central Railroad Company*, 25 *N. Y.*, 566; *Chicago & Alton R. R. Co. vs. Sullivan*, 63 *Ill.*, 293; *Chapman vs. Erie Railway Co.*, 55 *N. Y.*, 579.

The evidence offered and admitted had no relation to specific. or isolated acts of negligence. These, unless brought home to the knowledge of the master, would not have been admissible as reflecting on the question of the master's care. *Baltimore Elevator Co. vs. Neal*, 65 *Md.*, 438. We think, for the reasons we have given, and upon the authorities we have cited, there was no error committed in allowing the question excepted to in the first bill of exception, to be put and answered.

Under this ruling quite a number of witnesses testified to Huyett's general reputation for intemperance, extending from a period long anterior to his employment by the appellant up to and after the accident. One witness, Eyler, gave evidence as to Reese's general reputation. With respect to Huyett, the evidence, if credited by the jury, showed a general reputation covering many years uninterruptedly, and of such a notorious character that a jury might well have inferred it was known to the master when Huyett was employed, or else that the master failed to know it only because of neglecting to make proper inquiry. There was, consequently, evidence legally sufficient to go

to the jury upon the subject of the company's negligence; and, therefore, there was no error in rejecting the appellant's first and fifth prayers which sought to take the case from the consideration of the jury; nor in rejecting its fourth prayer which sought to exclude this evidence from the case.

There was error in rejecting the second prayer of the appellant. It asked the Court to say to the jury that if the injury to the plaintiff was caused by the intoxication or negligence of the brakemen, or either of them; that the brakemen were employed by Shull, the train dispatcher, and were sent out by him on the train in question; and further that Shull was guilty of negligence in sending out these brakemen, or either of them, on the train, "yet the jury are further instructed that Shull and the plaintiff were co-employés of the defendant in the sending out of said brakemen, and the defendant is not responsible to the plaintiff for the neglect or want of care of the said Shull, unless they shall further find that there was negligence on the part of the defendant in the employment of Shull, and there is no legally sufficient evidence in the cause from which the jury can so find." Now, whether Shull was a deputy master, or vice-principal, or only a fellow-servant of the plaintiff, is a question of law to be determined by the Court, if the facts be undisputed or conceded. *Yates vs. McCollough Iron Co.*, 69 *Md.*, 382. Shull was a mere dispatcher of trains, with power to employ and discharge flagmen and brakemen, and having general charge of the trainmen of the first division of the road and the movement of trains thereon. He was employed by the Division Superintendent, who had the general management of the division. The engineman and firemen are also under the instructions of the Division Superintendent. This is all the evidence (and it is entirely undisputed) to show that Shull was a vice-principal and not a fellow-servant. In *Wonder vs. Baltimore*

*& Ohio R. R. Co.*, 32 *Md.*, 418, the general rule was laid down, that all who serve the same master, work under the same control, deriving authority and compensation from the same source, and are engaged in the same general business, though it may be in different grades and departments of it, are fellow-servants, each taking the risk of the other's negligence. In that case a brakeman who was injured whilst using a defective brake, was held to be a fellow-servant with the mechanics in the shops, the inspector of machinery and rolling stock, and the superintendent of the movement of trains. And so in *State, use of Hamelin vs. Malster & Reaney,* 57 *Md.,* 287, it was held that a superintendent or manager is a fellow-servant within the rule which exonerates the master. In *Balto. Elevator Co. vs. Neal,* 65 *Md.,* 438, the captain of a steam tug owned by the company was held to be a fellow-servant of a laborer who was injured in the company's service. This Court said in that case: " Nor is the liability of the master enlarged or made different by the fact that the servant who had suffered the injury occupied a *grade* in the common service *inferior* to that of the servant whose misconduct caused the injury complained of." And in *Yates vs. McCollough Iron Co.,* 69 *Md.,* 370, the authorities were all reviewed, and it was held that the chief manager of the Carbon Works, who hired and discharged the hands, kept their time, &c., was only a fellow-servant of a laborer who was injured whilst operating the machinery. *Mayor, &c., of Baltimore vs. War,* 77 *Md.,* 593. In the face of these decisions it is impossible to treat Shull as anything more than a fellow-servant. The *management* of the division upon which he was train dispatcher was not committed to him. He was a subordinate appointed by the superintendent, and though he had charge of the trainmen and of the movement of trains on his division, and could employ and *discharge* flagmen and brakemen, it is far from being shown

Norfolk and Western Railroad Co. *vs.* Hoover.

that the master had relinquished all supervision of the work on that division, and entrusted its direction as well as the procuring of materials and machinery and other instrumentalities necessary for the service, to his *judgment and discretion*. The engineman and fireman were not employed by him, but by the Division Superintendent, and if the *grade* of his position was superior to that of the engineman, that fact did not make him a vice-principal as respects the latter. They were both engaged in the same common work, employed by the same agent of the common master, and were performing duties pertaining to the same general business; and unless the whole current of the Maryland decisions is to be reversed, they were fellow-servants of the railroad company, upon the evidence now before us. If this be so, then, even if Shull had been negligent in sending out these brakemen, and if that negligence caused the injury sued for, still the plaintiff could not recover, unless the company had not used due care in the selection of Shull, and of this there was not a particle of evidence offered.

The appellant's sixth prayer was properly rejected. There was no necessity to prove that the company had been incorporated. That fact was averred in the declaration, and was not denied by the pleas, and, under *sec.* 108, *Art.* 75 *of the Code,* must be taken to be admitted.

This brings us to the prayers presented by the appellee. Under a local law of Washington County, *Art.* 22, *secs.* 69, 70, *Code of Public Local Laws,* we are required to consider the rejected prayers of the plaintiff if he has excepted; and this he has done. By the defendant's exception the plaintiff's granted prayers and the defendant's rejected prayers are brought before us. By the plaintiff's exception his rejected prayers as well as the defendant's granted ones are presented for review.

The Court granted the plaintiff's first, seventh and eighth prayers. We do not understand that the seventh and

eighth are seriously questioned. Without discussing them, we need only say they are not open to substantial objection.

The appellee's first prayer, however, ought not to have been granted. It was objected in the argument that there was no evidence to support some of the hypotheses it contained, but as no special exception based upon that objection, and signed and sealed by the Judge, appears in the record, we are not at liberty to consider it. *Albert vs. State, use of Ryan,* 66 *Md.,* 334. The prayer, after setting forth the facts, proceeds: "Then, if the said injury to the plaintiff was *caused* by the want of ordinary skill and experience, or other unfitness on the part of the other hands, or any of them, in charge of said train, to manage and conduct the same, by *reason* of the intemperate state or condition of either of them," the plaintiff using due diligence, "the plaintiff is entitled to recover, provided the jury further find from the evidence that the defendant did not use reasonable care in the selection and employment of the brakemen *or other hands or employees engaged with the plaintiff in conducting said cars.*" That is to say, if the injury resulted from negligence caused by the intemperance of any of the train-hands, the defendant would be liable, if it had failed to use due care in the selection of either of the employés on that train, even though that particular employé, thus carelessly selected, had been guilty of no negligence, and had in no way occasioned the accident. Consequently, if the jury thought the injury was caused by the drunkenness of the brakeman, and that the company had not used due care in the selection of the fireman, the company would be liable, notwithstanding the fact that the fireman had been guilty of no negligence, and had in no way produced or helped to produce the injury. Thus, the negligence of one servant and the independent negligence of the master in employing some other servant, who had no connection with the accident, established, un-

der this instruction, the plaintiff's right to recover. This is not the law. On the contrary, it is the negligence of a fellow-servant and the additional negligence of the master in employing *that* servant, whose negligence actually caused the injury, which must concur before a plaintiff can recover in a case of this character. The instruction therefore announced an obviously erroneous proposition, and was calculated to mislead the jury, because there was evidence before them from which they might have inferred that due care had not been used in the selection of the fireman, though there was no evidence from which they could have found that the fireman was responsible for the accident. The instruction should have clearly restricted the negligence of the defendant in selecting the plaintiff's fellow-servants to the selection of such of them as by their incompetency, growing out of their intemperance, actually caused the injury.

The appellee's second, third, fourth and fifth prayers were properly rejected. There was no legally sufficient evidence adduced to support them on the several hypotheses assumed in them; and if they had been free from other objections, this one was sufficient to justify the Court in refusing to grant them.

There remains the appellant's third prayer, which the Court granted, but we think erroneously granted. It told the jury, in substance, that unless the brakeman, Huyett, was drunk at the time of the accident, and his negligence by reason of such drunkenness, produced or contributed to the accident, the evidence of general reputation as to his intemperance was not relevant, and could not be considered by the jury, *"unless such reputation was brought home to the knowledge of the defendant before the accident,"* and there is no such evidence of such knowledge. Had the prayer omitted the words italicised it would have been correct, but those words superadded a condition which is manifestly inaccurate. Now, it is obvious that if Huyett

was not drunk and was not negligent when the accident happened, and therefore did not cause or contribute to it, the evidence of his general reputation for intemperance was wholly irrelevant, even though that reputation had been brought home to the knowledge of the appellant before the accident; because, if he did not occasion the injury by his negligence, the fact that the master had knowledge of his bad reputation would in no way have made the master liable for an injury not caused by Huyett at all. In other words, the master's knowledge of Huyett's bad reputation had nothing whatever to do with the case if Huyett did not cause or contribute to the accident; and if Huyett did, by his intemperance, cause the accident, then it was immaterial whether the master had knowledge of his bad reputation or not; because, as already stated, the master was negligent in not knowing it. So, in either view of the question, the prayer was wrong because of the addition of the words indicated.

For the error in granting the appellee's first instruction, and the appellant's third, and for the error in rejecting the appellant's second prayer, the judgment must be reversed, and a new trial will be ordered.

*Judgment reversed, with costs above and below, and new trial awarded.*

(Decided 19th June, 1894.)