482 A.2d 156

**Carolyn W. CRAMER**

v.

**HOUSING OPPORTUNITIES COMMISSION OF MONTGOMERY COUNTY.**

**No. 2, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Oct. 9, 1984.

Certiorari Granted Jan. 9, 1985.

Frances J. Chetwynd, Washington, D.C., with whom were Burt A. Braverman, Cole, Raywid & Braverman, Washington, D.C., Joseph W. Pitterich and Pitterich & Snedegar, P.C., Chevy Chase, on brief, for appellant.

Daniel Karp, Baltimore, with whom were Donald C. Allen and Allen, Thieblot & Alexander, Baltimore, on brief, for appellee.

Argued before GILBERT, C.J., and BISHOP and BLOOM, JJ.

GILBERT, Chief Judge.

In this appeal Mrs. Carolyn Cramer seeks to make new law. She so seeks because she was assaulted and ravished by the appellee's employee.[1] She is disturbed that the appellee did not verify the employee's statement that he had no criminal record, when he, in fact, did have such a record of a nature which may have precluded employment. Be-

---

1. The employee-codefendant has not been convicted of raping Mrs. Cramer. For purposes of this case, the employer "conceded" that the employee was the rapist. On oral argument it was suggested that the "conceded" rapist may have entered into a plea bargain and as a result was not prosecuted for that particular violation.

cause of the appellee's failure to check for a criminal record and a jury's finding that appellee's shortcoming was not negligent, Mrs. Cramer asks that we declare that failure by some employers to ascertain the existence of their prospective employees' prior criminal record is negligence *per se.*

We hold that such a duty did not, in this case, exist, and we accordingly affirm the judgment of the Circuit Court for Montgomery County (Cave, J.).

Before setting out our reasons for so concluding, we recite the facts from which this matter arose.

Mrs. Cramer, in 1974, rented a townhouse in a privately owned housing development known as Pomander Court, Wheaton, Maryland. Approximately one year later, the housing development was purchased by the Housing Opportunities Commission of Montgomery County (HOC) for use as a middle income housing project.

Later that same year, George Slater sought employment through the Comprehensive Employment Training Act (CETA), a program administered by the Montgomery County Office of Family Resources (OFR). Slater was interviewed by an OFR intake counselor who obtained certain preliminary background and employment history from which Slater's eligibility under the CETA program was determined. Slater then filled out a Montgomery County employment application. He reported in the application that he had no record of criminal convictions.[2] Based on the information available to it, OFR apparently determined that Slater possessed the basic qualifications for residential maintenance work, and he was referred to HOC. Slater, along with two other CETA applicants, was interviewed by HOC for an entry level housing inspector position. The interview, it appears, was limited; HOC was restricted to

---

2. Slater, in fact, had been convicted of burglary, robbery, and assault. There was evidence that Slater had been arrested on a variety of other charges, including some sexual offenses, but he was not convicted.

asking questions that concerned employment history and skills.[3]

Of those persons interviewed by HOC, Slater was found to be the most qualified with respect to housing inspection, and he was hired by HOC in December, 1975. There was a training period during which Slater was supervised by HOC's Director of Maintenance, Charles Bryant. During the training program, Bryant accompanied Slater on several inspections and instructed him on the duties of a housing inspector.

One of the units that Slater was assigned to inspect in February, 1976, was occupied by Mrs. Cramer and her offspring. Slater arranged for an inspection of Mrs. Cramer's residence and he met her at her home on February 13, 1976, for the purpose of inspecting the unit. Mrs. Cramer's friend, Mr. DeForest, was present during the inspection, which lasted about 45 minutes.

Approximately two weeks after the inspection, Mrs. Cramer was awakened in her townhouse by a male intruder; she was repeatedly raped by him. During the assault Mrs. Cramer was blindfolded, but she claimed to be able to observe certain features of her assailant, particularly his voice. Although her ravisher asked if she knew who he was, she told him that she was unable to identify him. Following a police investigation, Slater was arrested and charged with the rape.

■ Two years later, Mrs. Cramer filed suit against HOC alleging that it was negligent in hiring Slater and that the negligent hiring resulted in her being raped by Slater.[4] The

---

**3.** HOC was required to submit a general proposal of the questions that they intended to ask during the interview. An OFR employment counselor was present during each interview to "assure ... that discrimination during the interview process ... [did] not take place."

**4.** That the sexual assault on Mrs. Cramer occurred in the night time, well after Slater's usual hours of employment, is of no importance. *Evans v. Morsell,* 284 Md. 160, 166, 395 A.2d 480, 483 (1978). The test is not whether the assault arose out of the course of the assailant's

trial took place in April, 1983. The matter was submitted to the jury on three issues, the pertinent one being: "1. Do you find that Housing Opportunities Commission was negligent in hiring Mr. Slater?" [5] The jurors answered "No" to the question.[6] Based on that finding, Judge Cave entered judgment in favor of HOC. This appeal and a cross-appeal followed.

Mrs. Cramer asseverates that it was error for the trial judge to fail to grant her motion for a directed verdict. She urges that we adopt a negligence *per se* rule and apply it to the case *sub judice*. To underpin her position, Mrs. Cramer points to *Evans v. Morsell*, 284 Md. 160, 395 A.2d 480 (1978). There the Court said that in *Norfolk & Western Railroad Co. v. Hoover*, 79 Md. 253, 263, 29 A. 994, 996 (1894), it had, "indicated that the employer's failure to make a proper inquiry *may under some circumstances* constitute negligence itself." (Emphasis supplied.) 284 Md. at 165, 395 A.2d at 483.

■■■ Ordinarily, whether an employer is negligent in hiring is a question of fact to be decided by the trier of fact, and not one of law for the court to determine. Admittedly, cases may arise where the facts establish that the employer's actions were such that as a matter of law he is negligent, but this is not one of those cases, nor was *Evans*. We need not and do not decide at what point negligence becomes a matter of law rather than a question of fact.

---

employment but rather whether the negligent hiring was the proximate cause of the rape.

5.  The other two issues were:
    "2.  If your answer to question No. 1 was 'yes,' do you find that the negligence was a proximate cause of the assault on the plaintiff?
    3.  In what amount do you assess compensatory damages?"

6.  The jury did not answer issue No. 2 in light of their negative response to issue No. 1. The jury did, however, return a verdict against Slater in the amount of $500,000.00. Slater did not defend Mrs. Cramer's suit against him.

Generally, there is no duty on the part of an employer to inquire regarding a potential employee's criminal record. *Evans v. Morsell.* For example, an employer is usually under no obligation to inquire whether a stonemason has a criminal record. Employing an armed guard, however, may require the employer to assure that the guard is not an irresponsible person who, once armed, will readily cause injury and damage to others.

Patently, the *Evans* Court did not believe that the employer in that particular case had a duty to inquire regarding the employee's criminal record. There a bartender, who had a criminal record for assaults, shot Evans. The latter sued the owner of the bar on the basis of negligent hiring. The trial court directed a verdict for the defendant and that ruling was affirmed by the Court of Appeals.

Were employers required to investigate whether a prospective employee had a criminal record, a positive finding indubitably would lead to the applicant's not being hired. Aside from the fact that a criminal record might well become a one-way ticket to poverty, such a policy has other effects. The costs of employing a person would rise because of the costs of the investigation. It takes no social scientist or behavioral expert to recognize that such a policy will scuttle society's concept of rehabilitation of criminals in favor of the idea of once convicted, forever condemned.

■ *Evans* teaches us that in order to prove negligent hiring, a plaintiff must show that the employer knew or should have known through the exercise of reasonable care, that the employee was potentially dangerous. 284 Md. at 165, 395 A.2d at 483.

■ The record in the instant case reflects that HOC presented evidence from which the jury could, and obviously did, believe that HOC had done all that it could reasonably be expected to do. Otherwise, the jury would have

responded "Yes" instead of "No" to the above quoted issue No. 1.

We think Mrs. Cramer received that to which she was entitled: the jury's consideration of her cause. That the jury resolved the issue against her means simply that she did not meet her burden of persuasion. Notwithstanding Mrs. Cramer's urging, we decline to set aside the jury's deliberation and hold that as a matter of law HOC's failure to ascertain that Slater had a criminal record was negligence *per se.*

As we indicated previously, HOC filed a cross-appeal from the judgment wholly in its favor. The Court of Appeals, speaking through Judge Eldridge in *Offutt v. Montgomery Co. Bd. of Ed.*, 285 Md. 557, 564 n. 4, 404 A.2d 281, 285 n. 4 (1979) said:

"It is established as a general principle that only a party aggrieved by a court's judgment may take an appeal and that one may not appeal or cross-appeal from a judgment wholly in his favor.

Where a party has an issue resolved adversely in the trial court, but ... receives a wholly favorable judgment on another ground, that party may, as an appellee and without taking a cross-appeal, argue as a ground for affirmance the matter that was resolved against it at trial. This is merely an aspect of the principle that an appellate court may affirm a trial court's decision on any ground adequately shown by the record." (Citations omitted.)

Under the pellucid language of *Offutt*, HOC should not have taken a cross-appeal. The procedure was improper and the cross-appeal will be dismissed without our considering it.

JUDGMENT AFFIRMED. COST OF APPEAL TO BE PAID BY APPELLANT.

CROSS–APPEAL DISMISSED. COST OF CROSS–APPEAL TO BE PAID BY APPELLEE.