**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1446**

LYNETTE HARRIS,

        Plaintiff - Appellant,

    v.

MAYOR AND CITY COUNCIL OF BALTIMORE, A Municipal
Corporation,

        Defendant - Appellee,

    and

CITY OF BALTIMORE, Department of Public Works, Bureau of
Water and Waste Water,

        Defendant.

-------------------------------------

UNITED STATES OF AMERICA; AMERICAN CIVIL LIBERTIES UNION;
AMERICAN ASSOCIATION OF UNIVERSITY WOMEN; AMERICAN JEWISH
CONGRESS; CALIFORNIA WOMEN'S LAW CENTER; ANTI-DEFAMATION
LEAGUE; COALITION OF LABOR WOMEN; ASIAN AMERICAN JUSTICE
CENTER; EQUAL RIGHTS ADVOCATES; DC EMPLOYMENT JUSTICE
CENTER; NATIONAL COUNCIL OF JEWISH WOMEN; LAWYERS' COMMITTEE
FOR CIVIL RIGHTS UNDER LAW; WOMEN EMPLOYED; MEXICAN AMERICAN
LEGAL DEFENSE AND EDUCATIONAL FUND; NATIONAL ALLIANCE FOR
PARTNERSHIPS IN EQUITY; NATIONAL ASSOCIATION FOR GIRLS AND
WOMEN IN SPORT; NATIONAL EMPLOYMENT LAW PROJECT; NATIONAL
EMPLOYMENT LAWYERS' ASSOCIATION; NATIONAL PARTNERSHIP FOR
WOMEN AND FAMILIES; NATIONAL WOMEN'S LAW CENTER; SARGENT
SHRIVER NATIONAL CENTER ON POVERTY LAW; SOUTHWEST WOMEN'S
LAW CENTER; UNION FOR REFORM JUDAISM; WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS,

        Amici Supporting Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Susan K. Gauvey, Magistrate Judge. (1:06-cv-02415-SKG)

Argued: January 28, 2010                    Decided: May 6, 2011

Before MICHAEL[1] and DUNCAN, Circuit Judges, and R. Bryan HARWELL, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed in part, reversed in part, and remanded by unpublished opinion. Judge Duncan wrote the opinion, in which Judge Harwell joined.

**ARGUED:** Joyce E. Smithey, RIFKIN, LIVINGSTON, LEVITAN & SILVER, LLC, Annapolis, Maryland, for Appellant. William Rowe Phelan, Jr., Justin Sperance Conroy, BALTIMORE CITY DEPARTMENT OF LAW, Baltimore, Maryland, for Appellee. **ON BRIEF:** George A. Nilson, City Solicitor, Cheryl Simpson-Parker, Assistant Solicitor, BALTIMORE CITY DEPARTMENT OF LAW, Baltimore, Maryland, for Appellee. Loretta King, Acting Assistant Attorney General, Dennis J. Dimsey, Linda F. Thome, Civil Rights Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for the United States, Amicus Supporting Appellant. Jocelyn Samuels, Lara S. Kaufmann, Dina R. Lassow, NATIONAL WOMEN'S LAW CENTER, Washington, D.C., for American Civil Liberties Union, American Jewish Congress, Anti-Defamation League, Asian American Justice Center, DC Employment Justice Center, Lawyers' Committee for Civil Rights Under Law, Mexican American Legal Defense and Educational Fund, National Alliance for Partnerships in Equity, National Association for Girls and Women in Sport, National Employment Law Project, National Employment Lawyers' Association, Sargent Shriver National Center on Poverty Law, Southwest Women's Law Center, Union for Reform Judaism, and Washington Lawyers' Committee for Civil Rights and Urban Affairs, Amici Supporting Appellant. Judith L. Lichtman, Sharyn

_____

[1] Judge Michael heard oral argument in this case but passed away before the decision was filed. The opinion is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

A. Tejani, Erin Hustings, NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES, Washington, D.C., for American Association of University Women, California Women's Law Center, Coalition of Labor Women, Equal Rights Advocates, National Council Of Jewish Women, and Women Employed, Amici Supporting Appellant.

---

Unpublished opinions are not binding precedent in this circuit.

3

DUNCAN, Circuit Judge:

Appellant Lynette Harris ("Harris") challenges the district court's grant of summary judgment on her claims against her employer, Appellee Mayor and City Council of Baltimore (collectively, the "City"), for hostile work environment and failure to promote under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; deprivation of constitutional equal protection under 42 U.S.C. § 1983; and state law negligent supervision and retention.[2] For the reasons stated below, we reverse the grant of summary judgment on the hostile work environment claim and its attendant § 1983 claim, and affirm the grant of summary judgment on Harris's other claims.

I.

Lynette Harris has worked for the City as an electrician since 1988. Beginning as an apprentice, she was twice promoted, rising to the level of Maintenance Technician III Electrical in 1994. She received no further promotions and continued to occupy that position. During the time period relevant to this case, Harris worked for the City's Department of Public Works at

---

[2] Harris also alleged a state law claim of intentional infliction of emotional distress, but she has abandoned that claim on appeal.

4

the Patapsco and Back River plants.  Women constituted a small minority of the overall work force at these plants.

A.

In 2003 and again in 2004, Harris applied and interviewed for a promotion to Supervisor Electrical I.  A male co-worker of Harris's, Edwin Moye, was chosen over her in 2003, and the City ultimately declined to fill the position in 2004 after two other male co-workers of Harris's, Keith Raynor and Kevin Lee, turned down offers.

In both 2003 and 2004, the candidates chosen for the supervisor position received higher interview scores than Harris even though she had greater experience.  Each candidate's score was based on answers to the interview questions, which were equally weighted and asked of each candidate.  Although the record does not contain any of the exact interview questions, the majority of questions related to technical matters, and at least one dealt with the candidate's seniority and experience.

Following her second unsuccessful promotion application, in December 2004, Harris was assigned to the electrical motor shop[3] supervised by James Gernhart.[4]  The environment of that shop and

---

[3] In this context, "shops" are both organizational units and the physical locations that contain offices for supervisors and common areas for technicians.

[4] The exact timeline of events is not clear from the record. Several times in her deposition testimony, Harris says that she

5

the conduct of the employees that worked within it form the main basis for Harris's hostile work environment allegations.

While in the shop, Harris was repeatedly subjected to profane, sexually explicit language. Harris was referred to as a "bitch" by her coworkers in the presence of her supervisor. J.A. 554. Harris also overheard male employees refer to other women as "bitches" on a daily basis.[5] J.A. 615. Others confirmed the frequent use of such offensive language. Judy Coleman, a supervisor at the Back River plant where Harris worked, heard male technicians refer to women using the "B word"

worked in Gernhart's shop from December 2005 to April 2006. Without acknowledging any previous error, she later says that she worked there from December 2004 to April 2005. Because the 2004-2005 timeline is consistent with several documents and Harris's answers to the City's interrogatories, and because it is the timeline most favorable to Harris as the non-movant, we adopt it rather than the 2005-2006 timeline.

[5] We draw upon Harris's Supplemental Declaration for the frequency of her exposure to the language. The City incorrectly states in its brief that these affirmations are "self-serving" and therefore "insufficient as a matter of law to defeat a properly supported Motion for Summary Judgment." Br. of Appellee at 23. There is, however, no rule against "self-serving" affidavits. Federal Rule of Civil Procedure 56(e) requires only that affidavits "be made on personal knowledge, set out facts admissible in evidence, and show that the affiant is competent to testify on the matters stated." Additionally, there is no genuine issue of fact if the only evidence offered by the plaintiff in opposition to summary judgment is an affidavit contradicting his or her own deposition testimony. Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984). Harris's affidavit fully conforms to these requirements, as it sets forth her own admissible testimony, based on personal knowledge and consistent with her deposition. Accordingly, it is properly considered here.

and the "C word." J.A. 386-88. Kevin Lee, another co-worker, confirmed that male employees referred to women as "bitches" and that there was "a [w]hole lot of that going on." J.A. 442. Male employees also referred to women, including Harris, as "troublemakers" who "didn't belong in those jobs." J.A. 389-90, 405, 616. According to Coleman, the use of such language increased when females came within earshot.

Conversations between male employees that Harris could not have avoided overhearing discussed "what they ha[d] done the night before with women" and visits to "gentlemen's clubs" or "titty bar[s]." J.A. 436, 633. Harris overheard one co-worker ask another if he had "got any pussy" over the weekend. J.A. 634. On another occasion, she heard a co-worker remark that "if his wife's pussy got wet you would hear it sloshing." J.A. 634. Harris reported that conversations about sexual activity with women and discussions of "women's anatomy in a sexual manner" occurred frequently and in the presence of supervisors. J.A. 617-18. Two of Harris's co-workers, Edwin Moye and Kevin Lee, confirmed that language of this nature was used daily in the shop.

In addition to profane language and conversations sexualizing women, a number of "provocative[] pictures of women" were displayed in the shops. J.A. 366. The pictures featured women who were "scantily clad," wearing bathing suits, or simply

7

"naked." J.A. 366-67, 402, 429. While male employees attended so-called safety meetings in Gernhart's office for an hour every day, Harris, who was excluded from the meetings, sat at a table in the shop with "provocative photographs placed under the glass." J.A. 616. Coleman observed in her deposition that these pictures were in "all the shop areas," J.A. 401, and Edwin Moye, disclosed that these pictures were "[i]n the shop area and [on] the hall bulletin board." J.A. 429.

On several occasions, Harris complained to her supervisors about her working conditions, including her assignment to Gernhart's shop. Based on these complaints, Ron Williams, Harris's union representative, called a meeting with her supervisors Rick Slayton and Gernhart, as well as with her co-worker Ron Sutton, to address the situation. During the meeting, Sutton repeatedly referred to Harris as a "bitch." J.A. 554, 619. At one point Williams objected to this language and Sutton responded by asking Slayton whether there was any policy prohibiting him from using the word "bitch." Slayton replied that there was not, and Sutton continued. At the end of the meeting, Gernhart agreed to speak to his employees about using "bad language" around Harris, but Slayton refused to reassign her. J.A. 554. Gernhart stressed that he did not want Harris in his shop, but that he was "being forced to take her." J.A. 554. Commenting on the meeting, Williams later wrote that

8

management's actions demonstrated "a clear message of the prejudice practiced in the electrical shops." J.A. 554.

On January 11, 2005, Harris again requested--this time by letter to an employee of the City's personnel department--that she be "removed from the supervision of James Gernhart Jr. and placed under [her] previous supervisor Mr. Sandy Altadonna because nothing has changed." J.A. 556. The letter catalogued Harris's previous complaints and what she considered to be inappropriate practices in Gernhart's shop, including the "provocative pictures of women in the motor shop area." J.A. 555-56. The letter led the personnel department, along with a representative from the City's Equal Employment Office ("EEO"), to investigate the shop in February 2005.

The investigation found "evidence of provocative pictures being displayed on tables, walls, workstations and two offices." J.A. 557. These pictures were deemed "less than appropriate for the shop for males or females" and ordered removed. J.A. 611. A few weeks later, one of Harris's supervisors was suspended by the EEO for failing to "remove offensive material in a timely manner from the work site." J.A. 558. Following the EEO visit, Harris once again made a request to be transferred out of Gernhart's shop. Her request was granted in April 2005.

Harris filed this action against the City on September 18, 2006. Her amended complaint contained four counts: (1) violation of equal protection under 42 U.S.C. § 1983 and Article 24 of the Maryland Declaration of Rights; (2) common law intentional infliction of emotional distress; (3) common law negligent supervision and retention; and (4) sex-based discrimination under Title VII, 42 U.S.C. § 2000e-2. The Title VII count encompassed her hostile work environment claim and two failure to promote claims arising out of the 2003 and 2004 promotion cycle

After discovery, the City moved for summary judgment on all counts. On September 30, 2008, the district court granted summary judgment on all claims except for Harris's failure to promote claim to the extent it concerned the City's refusal to select her for the supervisor position in 2004. After additional discovery, the City filed a second motion for summary judgment on the remaining claim. The court granted that motion on March 24, 2009. This appeal followed.

## II.

We first address Harris's Title VII discrimination claims of a hostile work environment and a failure to promote. Harris contends that the City was not entitled to summary judgment

10

because triable issues of material fact remain regarding her claims. We review a district court's grant of a summary judgment motion de novo. Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011). In conducting our review, we view "the facts and the reasonable inferences therefrom in the light most favorable to the nonmoving party." Id. We will affirm summary judgment for the City only if the record reveals the absence of a genuine issue of material fact and it is plain that the City is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## A.

An employee "may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986). To establish her hostile work environment claim, Harris "must show that the offending conduct (1) was unwelcome, (2) was because of her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (4) was imputable to her employer." Hoyle v. Freightliner, LLC, No. 09-2024, slip op. at 12 (4th Cir. Apr. 1, 2011) (quoting Bonds, 629 F.3d at 385). The district court granted the City's motion for summary judgment based on Harris's failure to adduce sufficient evidence to support elements two and three of her

11

hostile environment claim, and these are the only two elements at issue in this appeal.

1.

We first consider whether the record contains sufficient evidence from which a reasonable juror could conclude that the hostile work environment that Harris experienced was because of her sex. See EEOC v. Central Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009). "An employee is harassed or otherwise discriminated against 'because of' his or her gender if, 'but for' the employee's gender, he or she would not have been the victim of the discrimination." See Hoyle, slip op. at 13 (quoting Smith v. First Union Nat'l Bank, 202 F.3d 234, 242 (4th Cir. 2000)).

To satisfy this element, Harris points to the use of profane, sexually explicit language by her co-workers, as well as the pictures of nude or scantily clad women throughout the shop. We recently clarified that "[a] juror could reasonably find that sexualizing the work environment by placing photos of nude women or women in sexually provocative dress and poses in common areas is detrimental to female employees and satisfies the 'because of sex' requirement." Id. at 13; see also Jennings v. Univ. of N.C., 482 F.3d 686, 695-96 (4th Cir. 2007) (considering "[a] coach's sexually charged comments in a team setting, even if not directed specifically to the plaintiff,

12

[as] relevant to determining whether the plaintiff was subjected to sex-based harassment"). We recognized that "the critical inquiry is whether the plaintiff's <u>environment</u> was hostile . . . 'because of' her sex" and not solely on whether the conduct was directed at the plaintiff. [6] <u>Hoyle</u>, slip op. at 13; <u>see also</u> <u>Ocheltree v. Scollon Prods., Inc.</u>, 335 F.3d 325, 332 (4th Cir. 2003) (en banc) (finding that conduct in the work place, including conversations between male co-workers, satisfied the "because of" requirement since it "was particularly offensive to women and was intended to provoke [the claimant's] reaction as a woman"); <u>Petrosino v. Bell Atl.</u>, 385 F.3d 210, 222 (2d Cir. 2004) ("The fact that much of this offensive material was not directed specifically at [the claimant] . . . does not, as a matter of law, preclude a jury from finding that the conduct subjected [the claimant] to a hostile work environment based on her sex.").

In <u>Hoyle</u>, we deemed this requirement satisfied based on several factors, including "photos of scantily-clad women in G-strings taped to the lid of a company-issued toolbox" on the factory floor, <u>Hoyle</u>, slip op. at 4; calendars depicting "women in sexually suggestive positions in bathing suits" located in a

_____

[6] We therefore find unavailing one of the City's primary arguments that speech or conduct is actionable under Title VII as sexual harassment only if it is directed at the claimant. <u>See</u> Br. of Appellee at 16.

13

company's break room and cafeteria, id. at 5; and "a nude picture of a woman appear[ing] as the [company] computer's screen saver," id.

Similarly here, we are persuaded that a reasonable juror could find on this record that the "provocative pictures" throughout the shop areas sexualized Harris's work place and satisfied the "because of" gender requirement. As in Hoyle, the pictures here featured "scantily clad" women or women who were simply "naked." J.A. 366-67, 402, 429. The City's EEO investigation found such images "displayed on tables, walls, workstations and two offices." J.A. 557. The images were commonly visible "[i]n the shop area and in the hall bulletin board." J.A. 429. Harris also viewed "provocative photographs" that were "placed under the glass" of the break room table, where she sat every day while her co-workers conducted "safety meetings" without her. J.A. 616.

Furthermore, Harris's work environment was also laced with the repeated, daily use of demeaning words, such as "bitch," "cunt," and "troublemaker," to refer to women. We have previously concluded that a co-worker's use of the word "b***h on a daily basis when referring to women" was relevant to satisfying the "because of gender" requirement. Central Wholesalers, 573 F.3d at 175; see also Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 811-12 (11th Cir. 2010)

14

(characterizing the use of terms "whore," "bitch," and "cunt" as being "targeted at [a woman's] gender").

Therefore, viewing the evidence in the light most favorable to Harris, we find that a jury could reasonably conclude that the hostility of the environment was based on her gender.

2.

We now consider whether the record could support the conclusion that the hostility Harris faced was "sufficiently severe or pervasive to alter the conditions of [Harris's] employment and create an abusive work environment." Ocheltree, 335 F.3d at 331.[7] To establish this element, Harris must show not only that she subjectively found her work environment to be "hostile or abusive" but also that an "objectively reasonable" person would have found it to be so. Hoyle, slip op. at 16. This requirement is "crucial" to ensure that "ordinary socializing in the workplace--such as male-on-male horseplay or intersexual flirtation"--does not come to be regarded as discriminatory. Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998). Our inquiry must consider all the surrounding circumstances. Central Wholesalers, 573 F.3d at

---

[7] In the City's brief, the element was described in the conjunctive--"severe and pervasive." See Br. of Appellee at 20. Our precedent makes clear, however, that the element is properly viewed in the disjunctive, requiring only that a plaintiff prove the harassment was severe or pervasive. See Ocheltree, 335 F.3d at 331.

15

176; see also Oncale, 523 U.S. at 81-82 (instructing courts to consider the "constellation of surrounding circumstances, expectations, and relationships" beyond the "simple recitation of the words used or the physical acts performed"). "Evidence of a general atmosphere of hostility toward those of the plaintiff's gender is considered in the examination of all the circumstances." Jennings, 482 F.3d at 696.

As to the subjective inquiry, we believe that there are sufficient facts in the record for a reasonable jury to conclude that Harris personally found her work environment to be hostile and this affected her performance. Harris complained to her union representative and to the City that the language used by her co-workers and the explicit pictures posted throughout the workplace created a hostile environment. See Central Wholesalers, 573 F.3d at 176 (finding the subjective element met when a female employee "complained about . . . [the] harassment and stated that she found such harassment objectionable"). The record also contains the expert testimony of Harris's psychiatrist who diagnosed her with a depressive disorder affiliated with her work experiences, and the testimony of a co-worker who reported seeing Harris frequently crying at work. To affirm summary judgment for the City on this record, we would have to weigh the credibility of Harris's evidence, which is

16

"plainly not permitted on summary judgment." Hoyle, slip op. at 17.

We also conclude that a reasonable jury could find the harassment in Harris's workplace to be objectively severe or pervasive. As described more fully above, sexually explicit pictures of scantily clad or naked women were located throughout the shop, including the common areas. Harris could not help but view these images on a daily basis. And even after instructed by the City's EEO to remove the offending pictures, a shop supervisor did not comply and was suspended.

Furthermore, the language used by Harris's co-workers also supports a finding of objective severity or, at least, pervasiveness. When the harassment is exposure to language, we examine whether "a jury could find . . . [the words used] particularly offensive to women," Ocheltree, 335 F.3d at 332, as well as whether the context in which they were spoken "make[s] it clear that the harasser is motivated by general hostility to the presence of women in the workplace," Oncale, 523 U.S. at 80. A reasonable jury, looking at the entirety of the circumstances, could find that the shop area was an environment where hostility towards female employees pervaded the attitudes and conduct of co-workers and supervisors. Women were regularly referred to as "bitches," "cunts," and "troublemakers." In a meeting with Harris's union representative, a male co-worker repeatedly

17

referred to Harris as a "bitch" without condemnation by Harris's supervisor, who was also present. Discussions between co-workers about "women's anatomy in a sexual manner" and sexual activity with women occurred regularly. J.A. 618-19. We believe that a reasonable jury could find this type of profane language "particularly offensive to women." Ocheltree, 378 F.3d at 332. Ultimately, after examining all circumstances in the light most favorable to Harris, there is sufficient evidence in the record "to create a triable issue on whether the gender-based harassment was objectively severe or pervasive." Central Wholesalers, 573 F.3d at 176.

Accordingly, we conclude that the district court erred when it granted the City's motion for summary judgment based on Harris's failure to raise a genuine issue of fact with regard to elements two and three of her hostile work environment claim.

B.

Harris also appeals from the grant of summary judgment to the City on her Title VII failure to promote claims. Specifically, Harris argues that her applications for promotion to supervisor in 2003 and 2004 were denied because of her sex. Although Harris has made out a prima facie case of discrimination, we conclude that she has failed to prove that

the City's legitimate reason for denying her promotion was pretextual.[8]

In accordance with the burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), Harris bears the initial burden of establishing that: (1) she is a member of a protected group; (2) she applied for the position in question; (3) she was qualified for that position; (4) she was rejected; and (5) the position remained open or was filled by similarly qualified applicants outside the protected class. See id. at 802; see also Page v. Bolger, 645 F.2d 227, 229-30 (4th Cir. 1981) (applying the McDonnell Douglas framework in a failure to promote case). If Harris establishes a prima facie case of discrimination, "the burden shifts to the [City] to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004). If the City offers such a reason, the burden reverts to Harris "to prove by a preponderance of the evidence" that the City's reason

---

[8] There is some dispute over which promotion applications are properly before the court. Harris notes that she was also denied promotion in 1999, 2000, 2006, and 2007. However, because she presents no evidence concerning the employment decisions in these years, we do not consider them. In its brief, the City argues that Harris's 2004 application should not be considered because it was not alleged in her complaint. However, since we conclude that Harris did not satisfy her burden of showing pretext, and affirm summary judgment for the City, we need not address the City's alternative argument.

19

was merely "a pretext for discrimination." Id. "At this point, the burden to demonstrate pretext merges with the ultimate burden of persuading the court that [Harris] has been the victim of intentional discrimination." Id. (internal quotations). While anecdotal evidence of disparate treatment is relevant to proving pretext, general hostility itself is insufficient to create an issue of fact for a particular decision not to promote.

On this record, Harris has established a prima facie failure to promote case. Harris is a member of a protected class. She applied both times for the promotion and at least one member of the promotion board, Patricia Odle, admitted that Harris possessed the necessary qualifications to be a supervisor. Finally, in 2003 the City filled the position with a male candidate and in 2004 left it vacant.

With the burden upon it, the City argues that Harris was not promoted because other applicants were simply more qualified. The City presented evidence that in 2003 and 2004 it selected applicants based on their higher interview scores. We agree with the City that this constitutes "a legitimate, nondiscriminatory reason" for not promoting Harris. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 270 (4th Cir. 2005) (rejecting claim of pretext where "the deciding factor in the promotion decision was the rating for core and

functional competencies that each applicant who was interviewed received" and the promotion went to the highest scorer whereas the complainant received the "second-lowest score").

Harris makes two arguments in response: (1) that the evidence that she had more experience than those selected demonstrates pretext; and (2) that the City failed to carry its burden because the proffered nondiscriminatory reason is not sufficiently specific. Neither of these arguments is persuasive.

Harris's first argument fails because it is undisputed that experience is not the only factor in the City's promotion decisions. Roughly seven questions were asked in each of the interviews. Only one of them concerned general experience; the others were primarily technical. Each question was equally weighted and scored by the interviewers to calculate a total. Because answers to the six technical questions together weighed significantly more than the one for experience, Harris's greater experience is not, by itself, sufficient to raise a reasonable inference of pretext.[9] See Diamond v. Colonial Life & Accident Ins., 416 F.3d 310, 319 (4th Cir. 2005) (rejecting an attempt to show pretext in an employer's decision not to promote because

_____

[9] Harris's lower scores might also have resulted from the fact that she "didn't prepare for" her promotion interviews and simply "went on the knowledge that . . . [she] already had." J.A. 356.

21

"while management experience was a factor to be considered in awarding the promotion, it clearly was not intended to be dispositive").

Turning to Harris's second argument, we are not persuaded by her claim that the City's response was not sufficiently specific. Harris relies heavily on Alvarado v. Texas Rangers, 492 F.3d 605 (5th Cir. 2007), where the Fifth Circuit held that the defendant-employer had not satisfied its burden to proffer a nondiscriminatory reason because it had provided no explanation for how the interviewers arrived at the scores for each question. The Alvarado court noted that each score "is at least as consistent with discriminatory intent as it is with nondiscriminatory intent because [the plaintiff] may well have received the relatively low interview score on account of her sex." Id. at 617 (internal quotations omitted).

Unlike Alvarado, however, the City provided additional information concerning the interview questions asked: six tested technical expertise and one related to general experience. The City's nondiscriminatory reason for the lower scores is simply that, despite her greater experience, Harris did not have the technical expertise that the other candidates had. Given that the bulk of the promotion criteria related to technical expertise, Harris's overall score would naturally suffer. In response, Harris does not challenge the City's characterization

22

of what the questions were designed to evaluate, nor does she suggest that the individuals who scored higher than her were undeserving. See Diamond, 416 F.3d at 320 (rejecting claim of pretext when the complainant "d[id] not suggest any flaw in the rating system or that [the evaluators] failed to conduct fair evaluations" or "contest the results of those evaluations").

Thus, we conclude that Harris has not carried her burden to show the City's reason for failing to promote her was pretextual.

III.

Harris's remaining claims are dispensed with more readily. Because the City is clearly a state actor, Harris's § 1983 claims rise and fall with her Title VII claims. See Jennings, 482 F.3d at 701. Accordingly, we find error only to the extent that the City was awarded summary judgment on the § 1983 claim based on allegations of a hostile work environment. With regard to Harris's claim under Article 24 of the Maryland Declaration of Rights, because Harris has presented no argument regarding this issue on appeal, we consider the claim abandoned and do not address it.

Finally, with regard to Harris's claim for negligent supervision and retention, her allegations and supporting evidence are insufficient to survive summary judgment. Harris

23

alleges that the city breached its duty to her "by not taking action once it knew that the work environment was hostile and abusive toward" her. Appellant's Br. at 54. However, it is undisputed that, when Harris informed the City's personnel department of the situation, the City initiated an EEO investigation, which led to a disciplinary action against one of her supervisors, and which resulted in the grant of Harris's transfer request. Harris does not explain why this response amounted to negligence.

In responding to the City's motion for summary judgment, it is Harris's obligation to support her assertion that an issue of fact is genuinely disputed by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). Maryland's cause of action for negligent supervision and retention is not identical to a claim for discrimination under Title VII. Harris must show, inter alia, that the City failed to exercise "reasonable care and caution" in supervising its employees and that its failure to satisfy this duty proximately caused Harris's injury. Horridge v. St. Mary's Cnty. Dep't of Soc. Servs., 854 A.2d 1232, 1237 (Md. 2004) (quoting Norfolk & Western R.R. Co. v. Hoover, 29 A. 994, 995 (Md. 1894)). Thus, Harris cannot merely assert that the same set of facts giving rise to a Title VII claim gives rise to a negligence claim.

24

Because conclusory assertions are all that Harris has offered, we affirm the dismissal of this claim.

IV.

For the reasons stated above, we reverse the grant of summary judgment to the City with regard to Harris's hostile work environment claims under Title VII and § 1983, and we remand both claims for further proceedings. We affirm the remainder of the judgments below in favor of the City.

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED

25