**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

KIMBERLY HOYLE,

*Plaintiff-Appellant,*

and

A. BURTON SHUFORD,

*Plaintiff,*

v.

FREIGHTLINER, LLC,

*Defendant-Appellee.*

————————————————

THE EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

*Amicus Supporting Appellant.*

No. 09-2024

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Senior District Judge.
(3:07-cv-00169-GCM)

Argued: January 26, 2011

Decided: April 1, 2011

Before DUNCAN, DAVIS, and WYNN, Circuit Judges.

————————————————

Affirmed in part, reversed in part, and remanded by published opinion. Judge Davis wrote the opinion, in which Judge Duncan and Judge Wynn concurred.

**COUNSEL**

**ARGUED:** Geraldine Sumter, FERGUSON, STEIN, CHAMBERS, GRESHAM & SUMTER, PA, Charlotte, North Carolina, for Appellant. Eric A. Harrington, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Supporting Appellant. Keith Michael Weddington, PARKER, POE, ADAMS & BERNSTEIN, LLP, Charlotte, North Carolina, for Appellee. **ON BRIEF:** James L. Lee, Deputy General Counsel, Vincent J. Blackwood, Acting Associate General Counsel, Carolyn L. Wheeler, Assistant General Counsel, Jennifer S. Goldstein, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Supporting Appellant.

---

**OPINION**

DAVIS, Circuit Judge:

Appellant Kimberly Hoyle presents for our review two orders of the district court: (1) its grant of Appellee Freightliner, L.L.C.'s motion to strike from her opposition to Freightliner's motion for summary judgment the declaration of a belatedly-disclosed witness, and (2) its grant of summary judgment in favor of Freightliner on Hoyle's claims of hostile work environment sex discrimination, disparate treatment sex discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and common law negligent infliction of emotional distress.[1] As we explain within, we conclude that the district court did not abuse its discretion in striking the disputed declaration. On the other

---

[1]Hoyle also alleged a state law claim for wrongful discharge, but she has abandoned that claim on appeal. In the district court, after Hoyle and her husband filed a petition in bankruptcy, her claims in this case devolved to the bankruptcy estate. The bankruptcy trustee, A. Burton Shuford, was joined as a plaintiff, but he is not a party to this appeal.

hand, we are persuaded that the district court's disposition of the hostile work environment claim as a matter of law was inconsistent with circuit precedent, and we accordingly vacate the judgment as to the hostile work environment claim and remand the case for trial. In all other respects, we affirm the judgment in favor of Appellee.

## I.

## A.

We set forth the facts in the light most favorable to Hoyle, the non-movant in the district court.

Hoyle commenced working at Freightliner's Mt. Holly, North Carolina truck assembly plant in 1988; at the time of the events giving rise to this suit, she worked as a tractor trailer truck assembler. Women make up less than ten percent of Freightliner's work force. Throughout her employment at Freightliner, the company maintained an anti-harassment policy, which prohibits harassment and retaliation and provides ways for employees to complain of potential violations. Freightliner also maintained an internet and technology use policy that prohibits inappropriate use of Freightliner computers.

In the spring of 2004, Hoyle became an off-line mechanic. "Off-line" refers to the five different areas where final work is done on trucks after they come off the assembly line. In late May or early June 2005, Hoyle found a tampon tied to a key ring on a truck in her work area, a discovery she disclosed to another female employee, her union representative, and a Freightliner supervisor. In response, Hoyle's supervisor concluded that he did not know who placed the tampon on the truck and told Hoyle not to make "a fuss about it" because "that . . . would just make them act out even more." To Hoyle's knowledge, no action was taken by Freightliner in response to her complaint. Another female employee told

Hoyle, however, that she overheard a group of male employees laughing about the tampon incident several days later.

In June 2005, Hoyle noticed photos of scantily-clad women in G-strings taped to the lid of a company-issued toolbox. Hoyle reported the photos to her supervisor, Colonel Hopper, but there is no evidence that Hopper notified human resources of the potential violation of the company's anti-harassment policy. The following day, as Hoyle walked into the plant, a male co-worker accosted Hoyle and yelled at her that "she had no business telling anybody or . . . anyone what they can and can't put on their toolboxes."

The day after the altercation with her co-worker, Hoyle was walking near her work station when a co-worker asked her, "[y]ou're taping up your pant legs now so we can't see up under your pants?" The co-worker was referring to the fact Hoyle taped the bottom of her workpants so she would not get fluids on her clothing underneath the workpants. Hoyle contends the remark was in response to her recent complaints about the inappropriate sexual photos on the company's toolboxes.

In September 2005, a male co-worker brought sexually provocative calendars to work to share with other employees and supervisors. The calendars contained photos of women "in bathing suits, wet, [lying] in the water, their nipples protruding [from] their bathing suits, their hair wet, in different kinds of positions." The calendars were placed on a communal table in the cafeteria so workers could get one if they were interested. Another calendar was displayed on the company's main billboard in a break room.

Hoyle reported the calendars to her "team leader" the same day. Later in her shift, a co-worker taped the calendar to his toolbox and told Hoyle that she had no right to tell him what he could or could not put on his toolbox. Hoyle reported this incident to Hopper, who asked her what she found offensive

about the calendar. Hoyle responded by stating that depictions of women in sexually suggestive positions in bathing suits are inappropriate for the workplace. In her meeting with Hopper, she noticed the same swimsuit calendar displayed in his office. At the conclusion of the meeting, Hopper told Hoyle he was "sorry" and removed the calendar.

Hoyle also told Hopper about other photos that male employees had on the outside and inside of their company toolboxes. In particular, Hoyle told Hopper that one co-worker had a "picture of his wife in a G-string kind of like bent over." Again, Hopper asked Hoyle what was offensive about the photo. Hoyle explained that the photo was inappropriate, and Hopper made the co-worker remove the photo. After the co-worker was made to remove the photograph, he approached Hoyle and stated that she had no right to dictate what employees kept on their toolboxes. Hoyle also informed human resources about the calendars and the photos that male employees were keeping in their company-issued toolboxes. A human resources employee informed Hoyle that human resources would "check into" the issue. However, no employees were counseled or disciplined for violating Freightliner's anti-harassment policy.

In November 2005, when Hoyle logged into a company computer as part of her work duties, a nude picture of a woman appeared as the computer's screen saver. Hoyle informed her direct supervisor, Bobby Henderson, who conveyed the information to his supervisor, Hopper. Hoyle also informed human resources directly. Again, a human resources employee stated human resources would "check into" the incident. Shortly after the November 2005 computer incident, Freightliner reassigned Hoyle to work as a "5-S" person, whose duties consisted largely of janitorial tasks. Usually, assignment to this position was voluntary; Hoyle was the first employee assigned to the position involuntarily.

It is undisputed that Hoyle had significant problems with absenteeism. In that connection, on December 4, 2005, Hoyle called in sick to Freightliner's notification system because she had contracted an upper respiratory infection. She also contacted human resources directly to explain the reason for her absence. At the time she called in sick, Hoyle had previously entered into a "last chance agreement" with Freightliner.[2] A "last chance agreement" results when an employee has reached a point in which she will be terminated if she accrues any additional chargeable time. The last chance agreement provided that Hoyle would be terminated if she accrued any chargeable time between November 11, 2005 and March 23, 2006.

A human resources employee recommended that Hoyle be terminated because she called in sick after the start of her shift on December 4, 2005. The human resources manager agreed, and on or about December 7, 2005, Hoyle received a letter terminating her employment. Hoyle later attempted to provide medical documentation for her absence, but Freightliner refused to accept it. According to a human resources employee, Freightliner generally tried to be "flexible . . . fair and reasonable" regarding employee absences and supporting documentation. Sometime after Freightliner terminated Hoyle, a former co-worker informed Hoyle that a former Freightliner employee, Christopher Williams, had sold pornographic DVDs in the workplace. In addition, Williams had permitted employees, while they were in the workplace, to preview the DVDs prior to a purchase.

---

[2]Freightliner's attendance policy classifies absences as "chargeable" or "non-chargeable." Chargeable absences include tardiness, absenteeism and time, which are not made up within the same work week. If an employee accrues more than 50 hours of chargeable time, his or her employment is subject to termination.

## B.

Hoyle filed this suit against Freightliner in April 2007, alleging violations of Title VII and North Carolina law.[3] Then, in May 2007, Freightliner reinstated Hoyle with back-pay. An arbitrator engaged pursuant to the applicable collective bargaining agreement had determined that Hoyle's December 2005 report of her illness and necessary absence was made prior to the start of her shift, and therefore complied with company policy.[4]

Meanwhile, discovery proceeded in this case. On September 22, 2008, Hoyle responded to Freightliner's first set of interrogatories. In one of her answers, Hoyle stated that she did not "recall the specifics of all persons who had inappropriate materials in the workplace, but she does recall that an employee named . . . Chris Williams openly sold pornographic materials to employees in the workplace." Two of Freightliner's interrogatories asked Hoyle specifically to name "all individuals" having "knowledge of the matters alleged in the Complaint" and "all individuals . . . [Hoyle] may call as witnesses, or upon whose sworn statement or testimony [Hoyle] may rely, at any trial or hearing in this action." Hoyle did not list Williams in her answer to either of these interrogatories.

On January 15, 2009, Hoyle requested Williams' personnel file to investigate allegations of his selling pornographic materials to Freightliner employees. Freightliner objected to the production of Williams' file on the ground that the request

---

[3]Freightliner's brief brings to our attention that Hoyle had previously brought claims similar to those she asserts here against her international union and its local affiliate. *See* Appellee's Br. at 2 (citing *Hoyle v. United Auto Workers Local Union 5285*, 444 F. Supp. 2d 467 (W.D.N.C. 2006)). That case was dismissed in August 2006.

[4]We were advised at oral argument that Hoyle (and many others, apparently) had been laid off as a result of economic conditions in the industry.

"seeks documents not likely to lead to the discovery of admissible evidence . . . [and involves] individuals with no demonstrated relevance to this matter." Ultimately, however, although Hoyle's counsel had not sought the court's intervention in regard to the earlier refusal to produce the Williams file, Freightliner produced it.

After an effort that continued for several months, Hoyle's attorney eventually located Williams. Following an interview of Williams, Hoyle's attorney drafted a declaration for Williams' execution, which Williams modified, signed, and returned to Hoyle's attorney. Hoyle then notified Freightliner of the declaration and supplemented the prior discovery responses. The supplemental responses were provided nearly two months after the close of discovery and after Freightliner had filed its motion for summary judgment. On August 7, 2009, the district court granted Freightliner's motion to strike Williams' declaration from Hoyle's opposition to the motion for summary judgment and, in the same memorandum opinion and order, the district court granted Freightliner's motion for summary judgment. *See Hoyle v. Freightliner, LLC*, 2009 WL 2462098 (W.D.N.C. Aug. 7, 2009). Hoyle timely appealed.

## II.

We first turn to Hoyle's contention that the district court abused its discretion in striking the declaration of Christopher Williams pursuant to Federal Rule of Civil Procedure 37(c)(1).[5]

---

[5]The rule provides as follows:

(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.

(1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or

The district court found that Hoyle failed to timely identify Williams as a witness as required by Federal Rule of Civil Procedure 26(a)(1). The district court further concluded that Hoyle "has not shown that her failure to timely disclose Williams as a witness was either substantially justified or harmless." *Id.* at \*7. We review the imposition of discovery sanctions for abuse of discretion. *See Nelson-Salabes, Inc. v. Morningside Dev.*, 284 F.3d 505, 513 n.10 (4th Cir. 2002); *see also Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("[W]e give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1).").

Rule 37(c)(1) provides that a party who fails to identify a witness as required by Rule 26(a) or (e) is not allowed to use that witness to supply evidence on a motion. Escape from the sanction requires a showing that the failure to disclose is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The pertinent Advisory Committee Notes emphasize that the "automatic sanction" of exclusion "provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence." Fed. R. Civ. P. 37(c) advisory committee note (1993).

In determining whether nondisclosure of evidence is substantially justified or harmless, we consider:

---

instead of this sanction, the court, on motion and after giving an opportunity to be heard:

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1).

(1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony.

*Southern States Rack and Fixture v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003) (internal quotation marks omitted). For the sanction of exclusion to apply, Rule 37(c)(1) does not require a finding of bad faith or callous disregard of the discovery rules. *Id.* at 598.

The district court reasoned that references to Williams in deposition testimony and in Hoyle's discovery responses were "insufficient to alert Defendant that Williams was a potential witness." *See Hoyle*, 2009 WL 2462098, at *7. In particular, the court concluded that Williams was not identified in response to discovery requests that expressly sought identification of potential witnesses and persons with relevant knowledge. In its analysis of the motion to strike, the district court stated that Hoyle "has not shown that her failure to timely disclose Williams as a witness was either substantially justified or harmless. Defendant has been clearly prejudiced in that it has lost its opportunity to depose Williams. Accordingly, the Declaration of Williams will not be considered by the court." *Id.*

Under the circumstances, we are not able to say that the district court abused its discretion in striking the Williams declaration. Hoyle was well aware that Williams could have evidence highly relevant to her case. While Hoyle referenced Williams in response to one interrogatory, Hoyle chose not to list Williams as a potential witness. Hoyle then belatedly notified Freightliner of Williams' declaration, not only after the close of discovery but after Freightliner had filed its motion for summary judgment. Although counsel attested to her difficulties in tracking down Williams, we do not fault the district

court's conclusion that the failure to disclose Williams as a potential witness was neither substantially justified nor harmless.[6]

Contrary to Hoyle's contention before us, the fact that the district court did not expressly mention the five-factor test we adopted in *Southern States* is not indicative of an abuse of discretion. Cases decided subsequent to *Southern States* have not required courts to expressly consider each factor when evaluating discovery violations. *See, e.g.*, *Carr v. Deeds*, 453 F.3d 593, 604 (4th Cir. 2006) (affirming district court's exclusion of testimony for Rule 26(a) violation when district court did not mention *Southern States* factors). Finally, even if Freightliner should have disclosed Williams' personnel file earlier than it did, "litigants are not excused from their obligations under the rules of procedure merely because an opponent has failed to comply with his obligations." *Id.*

In sum, we conclude that the district court committed no abuse of discretion in striking from the summary judgment record the Williams declaration.

### III.

We turn now to the merits of the district court's summary judgment ruling. Hoyle argues that the district court erred in granting summary judgment in favor of Freightliner on Hoyle's hostile work environment, disparate treatment discriminatory discharge, retaliation, and negligent infliction of

---

[6]To be sure, the information to which Williams attests is highly relevant to proof of Hoyle's hostile environment claim. *See King v. McMillan*, 594 F.3d 301, 310-11 (4th Cir. 2010) (finding evidence about incidents of which plaintiff was unaware relevant to hostile work environment inquiry). In light of our remand of the hostile work environment claim in this case, *see infra*, it is entirely within the district court's discretion whether to permit a reopening of discovery, with or without some substitute sanction for Hoyle's belated disclosure of Williams as a potential witness. *See* Fed. R. Civ. P. 37(c)(1)(A)-(C).

emotional distress claims. We review *de novo* whether the district court erred in granting summary judgment, viewing the facts and drawing all reasonable inferences therefrom in the light most favorable to Hoyle. *Georgia Pacific Consumer Products v. Von Drehle Corp.*, 618 F.3d 441, 445 (4th Cir. 2010). Summary judgment is proper only if there is no genuine issue of material fact and Freightliner is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A.

Title VII makes it an "unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex." 42 U.S.C. § 2000e-2(a)(1). Because the workplace environment is one of the "terms, conditions, or privileges of employment," *see Meritor Savs. Bank v. Vinson*, 477 U.S. 57, 64-67 (1986), Title VII creates a cause of action for employees forced to work in a hostile workplace, *see id.* at 66 (establishing "that a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment").

In order to make out a hostile work environment claim based on sex, "a plaintiff must show that the offending conduct (1) was unwelcome, (2) was because of her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (4) was imputable to her employer." *Bond v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (quoting *Ziskie v. Mineta*, 547 F.3d 220, 224 (4th Cir. 2008) (internal quotations omitted)). The district court concluded that, as a matter of law, Hoyle failed to generate a genuine dispute of material fact as to the second element ("because of sex"), the third element (whether the

offensive conduct was "severe or pervasive"), and the fourth element (whether some basis exists for imputing liability to the employer). On appeal, Freightliner vigorously defends the district court's conclusions. For the reasons discussed below, we disagree with the district court's legal analysis of this claim.

1.

We first consider whether Hoyle has projected substantial evidence that the offending conduct was based on her sex. "An employee is harassed or otherwise discriminated against 'because of' his or her gender if, 'but for' the employee's gender, he or she would not have been the victim of the discrimination." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000). A plaintiff "may prove sex-based discrimination in the workplace even though she is not subjected to sexual advances or propositions." *Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (en banc) (citing *Smith*, 202 F.3d at 242-43). Consequently, a trier of fact may reasonably find discrimination when "a female victim is harassed in such sex-specific and derogatory terms . . . as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

A juror could reasonably find that sexualizing the work environment by placing photos of nude women or women in sexually provocative dress and poses in common areas is detrimental to female employees and satisfies the "because of sex" requirement. *See, e.g.*, *EEOC v. Int'l Profit Assoc.*, 654 F. Supp. 2d 767, 790 (N.D. Ill. 2009); *Robinson v. Jacksonville Shipyards*, 760 F. Supp. 1486, 1523 (M.D. Fla. 1991). As amicus Equal Employment Opportunity Commission emphasizes, the critical inquiry is whether the plaintiff's *environment* was hostile or abusive "because of" her sex. Amicus Br. 11 (citing *Meritor Savs. Bank*, 477 U.S. at 64 (Title VII "affords employees the right to work in an environment free

from discriminatory intimidation, ridicule, and insult.")). As such, the Supreme Court has held that "the critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale*, 523 U.S. at 80 (internal quotation omitted).

A juror could reasonably find that the conduct of her fellow workers at Freightliner affected Hoyle's work environment because of the repeated display of sexualized photos of women. Although these photos may have been seen by both female and male employees, a juror could find "[m]uch of the conduct . . . particularly offensive to women and . . . intended to provoke [plaintiff's] reaction as a woman." *Ocheltree*, 335 F.3d at 332. Similarly, as the Second Circuit has noted,

> [T]he depiction of women in the offensive . . . graphics was uniformly sexually demeaning and communicated the message that women as a group were available for sexual exploitation by men. Such workplace disparagement of women . . . stands as a serious impediment to any woman's efforts to deal professionally with her male colleagues.

*Petrosino v. Bell Atlantic*, 385 F.3d 210, 222 (2d Cir. 2004).

In addition, the tampon incident, in particular, has strong sex-specific connotations and a reasonable juror could infer that the conduct was directed at women in the workplace and, specifically, at Hoyle. A juror could reasonably infer that a male co-worker placed the tampon, a clear sex-specific item, on the truck on which Hoyle was assigned to work because of "hostility to the presence of women in the workplace." *Oncale*, 523 U.S. at 80. As a result, the district court's conclusion that Hoyle "cannot establish that any of the alleged conduct occurred because of her sex as the conduct took place in group settings" is unfounded.

In addition to reliance on the character of the offensive materials on display in the workplace, a reasonable juror could reasonably find that Hoyle was, in fact, *targeted* because of her sex. The district court concluded that, because Hoyle did not know who placed the tampon in her truck, she could not demonstrate that the act was directed at her. We disagree. There was evidence that the tampon was placed in a truck that either Hoyle or a female co-worker would take for final assembly. There was also evidence that Hoyle heard male employees laughing about the tampon incident. Consequently, a reasonable juror could find that the tampon was placed at Hoyle's work station because of Hoyle's sex. Similarly, a reasonable juror could find the screen saver depicting a naked woman reflected sex-based animus in Hoyle's work environment and was loaded on the computer because of Hoyle's sex.

In short, viewing the evidence in the light most favorable to Hoyle, we are persuaded that Hoyle satisfies the "because of sex" element of her hostile work environment claim for purposes of summary judgment.

### 2.

We next consider whether Hoyle projected sufficient probative evidence such that a reasonable juror could find in her favor as to the third element of her hostile work environment claim: whether the offensive conduct was severe or pervasive such that it "alter[ed] the conditions of her employment and create[d] an abusive working environment." *See Bond*, 629 F.3d at 385. The question of whether harassment was sufficiently severe or pervasive is "quintessentially a question of fact." *Paroline v. Unisys Corp.*, 879 F.2d 100, 105 (4th Cir. 1989), *vacated in part on other grounds*, 900 F.2d 27 (4th Cir. 1990) (en banc).

There are "both subjective and objective components" to this element. *Ocheltree*, 335 F.3d at 333 (citing *Harris v.*

*Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993)). The environment must be perceived by the victim as hostile or abusive, and that perception must be objectively reasonable. *Harris*, 510 U.S. at 22. "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale*, 523 U.S. at 81 (quoting *Harris*, 510 U.S. at 23). In addition, the totality of the circumstances includes conduct directed not at the plaintiff. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179 (4th Cir. 2001) (rejecting the contention that only conduct directed at the plaintiff could be considered in evaluating a hostile work environment claim). Rather, the inquiry concerns the nature of the workplace environment, "and whatever the contours of one's environment, they surely may exceed the individual dynamic between the complainant and [the alleged wrongdoer]." *Id.* at 184. *See also EEOC v. Fairbrook Medical Clinic, P.A.*, 609 F.3d 320, 328 (4th Cir. 2010); *Jennings v. University of North Carolina*, 482 F.3d 686 (4th Cir. 2007) (en banc) (noting that in reviewing hostile environment cases "[a]ll the circumstances are examined . . . [and] [e]vidence of a general atmosphere of hostility toward those of the plaintiff's gender is considered in the examination of all the circumstances"). *See also Harris*, 510 U.S. at 23 ("[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances.").

The district court failed to recognize that a reasonable juror could reasonably find that, taken together, the various incidents and displays "that consistently painted women in a sexually subservient and demeaning light were sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and to create an abusive work environment." *Ocheltree*, 335 F.3d at 333. Instead, the district court concluded that Hoyle's "evidence only reveals simple teasing, mildly inappropriate visual materials, off-hand comments, and isolated incidents, which were not physically threatening, and did not interfere with Plaintiff's work performance." *See Hoyle*, 2009 WL 2462098, at *3. Further, the district court

noted that "the calendars and pictures were not directed at Plaintiff" and that "materials and conduct far more graphic and offensive have been found not actionable." *Id.* (citing *Dwyer v. Smith*, 867 F.2d 184, 187-88 (4th Cir. 1989)).

The district court erred. The record clearly demonstrates that Hoyle *subjectively* viewed the incidents and displays giving rise to her complaints as abusive; only a contrary *credibility determination*, plainly not permitted on summary judgment, could lead to a contrary finding as to the *subjective prong* of the applicable test. *See, e.g.*, *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991) ("It is not our job to weigh the evidence . . . or to disregard stories that seem hard to believe. Those tasks are for the jury.") (citation omitted). Moreover, as we have suggested, viewing the evidence in the light most favorable to Hoyle, we conclude that the multiple incidents and displays here were far from "mildly inappropriate." *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (noting that courts review hostile work environment claims "based on the cumulative effect of individual acts"). To the contrary, the evidence might well persuade a reasonable juror that in the aggregate, the incidents and displays would have been *objectively abusive* to a reasonable person in Hoyle's position. Furthermore, the district court's consideration that the conduct of Hoyle's co-workers was "not physically threatening," while certainly an appropriate factor in assessing a plaintiff's evidence, is not controlling. Actionable harassment can be severe and/or pervasive without being physically threatening, e.g., where it is humiliating and demeaning. *See Fairbrook Medical Clinic*, 609 F.3d at 328. In sum, the evidence marshaled by Hoyle was sufficient to generate a genuine dispute of material fact as to whether the abusive aspects of her work environment were severe or pervasive.

Our conclusion in this regard is informed by our firm conviction that the district court misapplied the appropriate summary judgment standard in concluding that Hoyle failed to

generate a genuine dispute of material fact on the issue of whether the complained-of incidents and displays satisfied the "severe or pervasive" standard. This is made clear by the district court's citation to *Dwyer v. Smith*, 867 F.2d 184, 188-89 (4th Cir. 1989) (affirming district court's findings that pornographic material placed in plaintiff's mailbox and evidence that plaintiff's coworkers engaged in sexually explicit conversations were insufficient to show a hostile work environment), to support its observation that "materials and conduct far more graphic and offensive [than that evidenced in this case] have been found not actionable." *Hoyle*, 2009 WL 2462098, at *3. But in *Dwyer*, we affirmed the lower court's judgment reached *after a trial on the merits*, stating:

> These findings and the district court's ultimate conclusion that Dwyer failed to establish a prima facie case of sexual harassment are not clearly erroneous within the meaning of Rule 52(a).

*Id.* at 189 (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985)). Plainly, the defense verdict after a trial on the merits in *Dwyer* provides no support for an award of summary judgment to defendant in this case.

On appeal, Freightliner pursues a similar approach and undertakes to defend the district court's summary judgment on the issue of severity/pervasiveness by cataloging some of the myriad cases that have come before this court and that involved behavior considerably more offensive and opprobrious than that shown here. While this tack is understandable, and assuming that other cases involve more heinous behavior in male dominated workplaces than that shown here, we have never held that a weak case is necessarily one that should be disposed of on summary judgment. The question at the summary judgment stage is not whether a jury is *sure* to find a verdict for the plaintiff; the question is whether a reasonable jury could rationally so find. *Spillman*, 925 F.2d at 95. On this record, we are satisfied that the answer to that query is "yes"

and that it was error for the district court to rule to the contrary as a matter of law. We have never held that *a grant of summary judgment* in favor of a defendant is a legitimate substitute for *a jury verdict* in favor of a defendant, and we decline to do so here.

3.

Finally, we consider whether some basis exists for imputing liability to Freightliner. In a case where an employee is sexually harassed by a coworker, the employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998) (noting that "[n]egligence sets a minimum standard for employer liability under Title VII"). Under this standard, an employer may be charged with constructive knowledge of coworker harassment when it fails to provide reasonable procedures for victims to register complaints. *Ocheltree*, 335 F.3d at 333-34 (citing *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 441 (2d Cir. 1999); *Wilson v. Tulsa Junior Coll.*, 164 F.3d 534, 540-42 (10th Cir. 1998)). In addition, the distribution of an anti-harassment policy provides "compelling proof" that the company exercised reasonable care in preventing and correcting harassment. *Barrett v. Applied Radiant Energy*, 240 F.3d 262, 266 (4th Cir. 2001). To sustain her claim, a plaintiff must show by a preponderance of the evidence that the policy was either adopted or administered in bad faith or that it was otherwise defective or dysfunctional. *Id.*

Here, the district court concluded that Freightliner took "reasonable care to act appropriately to end any unacceptable behavior. Any imperfections that [Hoyle] alleges in [Freightliner's] investigation do not render [Freightliner's] response to the complaints inadequate as a matter of law." Again, however, the district court failed to view the evidence in the light most favorable to Hoyle. The question is not whether Freightliner's "response to the complaints" was "inadequate as a mat-

ter of law." Rather, bearing in mind that the plaintiff need prove only that Freightliner failed to exercise reasonable care, *see, e.g.*, *Whitten v. Fred's, Inc.*, 601 F.3d 231, 243 (4th Cir. 2010), and bearing in mind that at the summary judgment stage, all facts are viewed and all inferences are drawn in favor of the non-movant, here Hoyle, the issue is whether a genuine issue for trial on Freightliner's allegedly negligent response is presented.

We conclude the answer to that question is "yes." A reasonable juror could reasonably conclude on this record that Freightliner had actual or constructive notice of the sexually harassing incidents and displays and failed to follow its own policies calling for a firm response designed to end the harassment. Hoyle notified human resources directly after several incidents, and Freightliner acknowledges receiving complaints from Hoyle "centered around inappropriate material" in the workplace. Indeed, Hoyle's supervisor, Hopper, maintained on his office wall one of the calendars about which Hoyle complained, *see supra* p. 5, although Hopper removed it after Hoyle complained. *Id.* Moreover, a reasonable juror could conclude that Freightliner did not promptly or effectively enforce its own anti-harassment policies based on its repeated failure to investigate. According to Hoyle, she was advised by responsible management officials on several occasions that her complaints would be looked into, but there is no documentation that any investigations took place.

On this record, a reasonable juror could well find under proper instructions that Freightliner had a reasonably effective anti-harassment policy and that during the period May through November 2005, it reasonably executed that policy in the face of Hoyle's numerous complaints. Of course, that reasonable juror would not be *compelled* so to conclude, and could reasonably reach a contrary finding. Such a juror could find, as we have observed in analogous circumstances, that "[t]he problem with the [Freightliner] policy lies not in theory but in practice." *Merritt v. Old Dominion Freight Line, Inc.*,

601 F.3d 289, 297 (4th Cir. 2010); *see also Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1131-32 (4th Cir. 1995) (reversing grant of summary judgment in part because court "[could not] say that [defendant's response to national origin harassment] was, as a matter of law, reasonably calculated to end the harassment."). Accordingly, we are satisfied that the district court erred in concluding that Hoyle failed to generate a genuine dispute of material fact as to whether Freightliner exercised reasonable care in foreclosing and/or effectively responding to Hoyle's alleged victimization through coworker sexual harassment.

4.

We are persuaded, for the reasons set forth, that Hoyle has satisfactorily established by competent evidence the existence of genuine issues of material fact on her sexual harassment claim under Title VII. We therefore vacate the district court's grant of summary judgment in favor of Freightliner on Hoyle's hostile work environment claim under Title VII and remand that aspect of this case for trial.

B.

Hoyle also appeals the dismissal of her claim for disparate treatment based on discriminatory discharge. To succeed on a discriminatory discharge claim, a plaintiff must demonstrate, under the burden-shifting approach applicable here, that: (1) she is a member of a protected class under Title VII; (2) the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) she suffered more severe discipline for her misconduct as compared to those employees outside the protected class. *Taylor v. Virginia Union University*, 193 F.3d 219, 234 (4th Cir. 1999) *abrogated on other grounds by*

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) (citing *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993)).[7]

If the plaintiff makes this showing, a presumption of illegal discrimination arises, and the burden of production shifts to the employer, "who must articulate a non-discriminatory reason for the difference in disciplinary enforcement." *Cook*, 988 F.2d at 511. If the employer articulates such a reason, "the burden shifts back to the plaintiff to demonstrate that the employer's reasons are not true but instead serve as a pretext for discrimination." *Id.* Importantly, "[a]lthough intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Having reviewed the record, we agree with the district court that Hoyle was unable to "prove her prima facie case because she has not identified any similarly situated employees who were treated more favorably while on a last chance agreement." *Hoyle*, 2009 WL 2462098, at *5. While Hoyle identified similarly situated male employees who called in sick at the time Hoyle did and were not disciplined, Hoyle failed to identify any similarly situated men who also had problems with excessive absenteeism, leading to a "last chance" agreement. Consequently, Hoyle's claim for disparate treatment fails as a matter of law.

## C.

Hoyle next argues that Freightliner retaliated against her when she complained of co-worker misconduct when it reas-

---

[7]Hoyle has not suggested the existence of any direct evidence that her termination was discriminatory.

signed her to work the 5-S position and by terminating her employment. To succeed on a retaliation claim, a plaintiff must prove that (1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).[8] If a plaintiff "puts forth sufficient evidence to establish a prima facie case of retaliation" and a defendant "offers a non-discriminatory explanation" for his termination, the plaintiff "bears the burden of establishing that the employer's proffered explanation is pretext." *Yashenko v. Harrah's Casino*, 446 F.3d 541, 551 (4th Cir. 2006).

The district court concluded that Hoyle's reassignment to a 5-S position cannot support a prima facie case of retaliation because "such assignment does not constitute an actionable adverse employment action." We disagree. An adverse action is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761. In addition, Hoyle "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006) (citing *Rochon v. Gonzalez*, 438 F.3d 1211, 1217-18 (D.C. Cir. 2006)). Here, Hoyle was first reassigned from her regular off-line position to perform janitorial duties. In addition to her reassignment, Hoyle was, in fact, terminated. Both of these actions might have dissuaded a reasonable worker from advancing a charge of discrimination.

---

[8]As with her disparate treatment claim, Hoyle has not suggested the existence of any direct evidence that her termination was retaliatory.

Further, Hoyle demonstrates a causal connection because of the temporal proximity between her complaints and her reassignment. While evidence as to the closeness in time "far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989). Hence, Hoyle has made a prima facie showing of retaliation.

Nevertheless, Freightliner has rebutted Hoyle's prima facie case by alleging legitimate nondiscriminatory reasons for transferring and eventually terminating Hoyle. Further, Hoyle fails to demonstrate pretext. Hoyle acknowledges that the Mt. Holly plant was overstaffed and that there was no other work for her to do the day she was reassigned to the 5-S position. In addition, there is no evidence that Hoyle was regularly required to complete such tasks.

Thus, Hoyle has failed to project evidence of pretext. Hoyle presents no evidence that she was not terminated for calling in late to work to report her absence. In addition, as already mentioned, there are no other employees who had signed a last chance agreement who called in late to work and were not disciplined. Consequently, the district court did not err in granting summary judgment in Freightliner's favor regarding Hoyle's retaliation claim.

### D.

Finally, we turn to Hoyle's negligent infliction of emotional distress claim. To make out a claim for negligent infliction of emotional distress, "a plaintiff must . . . [allege] that the defendant was negligent, that it was foreseeable to the defendant that his negligence would cause the plaintiff severe emotional distress, and that the conduct, in fact, caused severe emotional distress." *Fox-Kirk v. Hannon*, 542 S.E.2d 346, 352 (N.C. Ct. App. 2001); *see also Johnson v. Ruark Obstetrics and Gynecology Assocs.*, 395 S.E.2d 85, 97 (N.C. 1990).

"Normally, termination of employment, even where it is wrongful, is insufficient to alone sustain a claim of [negligent infliction of emotional distress]." *Faulkner v. Tyco Elecs. Corp.*, 552 F. Supp. 2d 546, 559 (M.D.N.C. 2008).

The district court correctly held that Hoyle failed to make the requisite showing. Even assuming that Freightliner acted negligently, Hoyle did not offer evidence to support the claim that Freightliner was aware of any foreseeable risk of severe emotional harm. As a result, the district court did not err in concluding that Hoyle failed to establish a genuine issue of material fact regarding her negligent infliction of emotional distress claim.

## IV.

For the foregoing reasons, we vacate the judgment of the district court as to Hoyle's hostile work environment/sexual harassment claim under Title VII and remand that claim for a trial on the merits. As to Hoyle's remaining claims, we affirm the judgment of the district court.

*AFFIRMED IN PART,*
*REVERSED IN PART,*
*AND REMANDED*