**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1771**

SHELIA HOLMES,

        Plaintiff - Appellant,

    v.

GENERAL DYNAMICS MISSION SYSTEMS, INC.,

        Defendant - Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Abingdon.   James P. Jones, District Judge.  (1:18-cv-00019-JPJ-PMS)

Argued:  October 29, 2020                      Decided:  December 9, 2020

Before MOTZ, KEENAN, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:**  Richard F. Hawkins, III, THE HAWKINS LAW FIRM, PC, Richmond, Virginia, for Appellant.  Michael Joseph Murphy, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Washington, D.C., for Appellee.  **ON BRIEF:**  John B. Flood, Connie M. Ng, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this Circuit.

PER CURIAM:

Shelia Holmes brought this Americans with Disabilities Act ("ADA") action against her former employer, General Dynamics Mission Systems, Inc. ("General Dynamics"). The district court granted summary judgment in favor of General Dynamics, holding that Holmes did not meet the ADA's definition of a "qualified individual" because she could not comply with a valid safety requirement for her position. Holmes maintains that the court erred in doing so. She also challenges the district court's order striking the declaration of a potential witness that she had not identified during discovery. For the reasons that follow, we affirm the judgment of the district court.

I.

In 1998, Holmes began work for General Dynamics as a shelter fabricator. Holmes's job involved the use of a variety of heavy equipment and machinery. At least as early as 2003, Holmes became aware that the company was implementing a requirement that shelter fabricators wear steel-toed shoes as protection from accidents involving heavy equipment and machinery. The shelter fabricator job description does not explicitly include compliance with safety requirements, but General Dynamics posted the steel-toed shoe requirement on sign boards throughout the fabrication and production areas where Holmes worked. Additionally, the collective bargaining agreement applicable to Holmes provides that employees may face disciplinary action if they refuse to cooperate with the company's safety precautions.

Holmes, however, suffers from diabetes and brachymetapodia, a congenital condition characterized by short or overlapping toes. According to Holmes, these

2

conditions make it unsafe for her to wear steel-toed shoes because such inflexible footwear can cause foot sores or ulcerations that could potentially threaten her life or lead to amputation. For this reason, Holmes wore flexible footwear, like tennis shoes, from the outset of her employment with General Dynamics. For years, when Holmes presented her supervisor with a doctor's note explaining her conditions, the company allowed Holmes to continue wearing tennis shoes and told her to keep a copy of her doctor's note explaining her condition on hand to show to supervisors.

In July 2013, however, General Dynamics received a negative audit finding after an inspector observed an employee, Arlene Bland, in a production area without steel-toed shoes. Although this single violation did not result in any immediate sanction, the company feared that a repeat violation would endanger its certification of compliance with at least two widely accepted international standards (ISO 14001 and OHSAS 18001). Additionally, a few years before, an employee was injured while failing to wear steel-toed safety shoes.

As part of its corrective actions, the company concluded that it must enforce the steel-toed shoe policy and informed supervisors that they would be held accountable for their subordinates' compliance with the policy. A job-safety analysis conducted by an outside firm in August of 2013 further confirmed the importance of this policy, concluding that steel-toed boots constituted personal protective equipment required for the shelter fabricator position.

But in late 2013, Holmes again presented her supervisor with a doctor's note stating that she could not wear steel-toed shoes. In response, General Dynamics placed her on a leave of absence.*

During the next two years, a human resources manager worked extensively with Holmes to find safety shoes compatible with her disabilities. The company explored a variety of different shoe options for Holmes, including custom-made shoes that it would have, at the very least, heavily subsidized. Holmes rejected each of these alternatives, submitting several doctors' notes that consistently maintained that she could not wear any of those shoe options.

General Dynamics re-reviewed the steel-toed shoe requirement to determine if it could safely exempt Holmes from it. The company also explored whether it had open positions for which Holmes was qualified but which would not require her to wear steel-toed shoes. Ultimately, General Dynamics concluded that it could not safely exempt Holmes from wearing steel-toed shoes while she was employed as a shelter fabricator, that the steel-toed shoe requirement was a necessary safety requirement for that position, and that the company had no suitable alternative positions available. The company terminated Holmes's employment in 2016.

---

\* Holmes's husband, who also worked for General Dynamics, stated in his deposition that the company made at least one temporary exception to the steel-toed shoe policy in order to accommodate another employee's disability even after it placed Holmes on leave. But the record establishes that when the safety manager at the plant learned of this situation, she immediately responded to ensure compliance.

Holmes then filed this ADA action. After discovery, General Dynamics moved for summary judgment. Holmes opposed that motion, attaching to her opposition a declaration from Bland, the employee whose noncompliance with the steel-toed shoe policy resulted in a negative audit finding in 2013. In the declaration, Bland stated that General Dynamics had not disciplined her after she violated the steel-toed shoe policy, that she continued wearing tennis shoes even after the audit finding, and that she regularly observed other employees doing the same. The company moved to strike the declaration because, as Holmes later conceded, she failed to identify Bland in her required initial or supplementary discovery responses as a witness with information supporting her claim. The court held a hearing on the motion, after which it struck the declaration.

Ultimately, the court granted General Dynamics's summary judgment motion, finding Holmes did not meet the ADA's definition of a "qualified individual" because she could not comply with her employer's valid safety requirements. Holmes then timely filed this appeal.

II.

Holmes first challenges the district court's order striking Bland's declaration. We can quickly reject this argument.

The Federal Rules of Civil Procedure require a party to identify in its initial disclosures "each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). If a party discovers that the original disclosure requires additions or corrections, the party

5

must supplement its disclosure. Fed. R. Civ. P. 26(e)(1)(A). The Rules further provide that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

As the district court found, Holmes failed to identify Bland as a potential witness in her initial or supplementary disclosures. The court concluded that this failure was neither substantially justified nor harmless. We accord such discretionary decisions great deference. *See Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017).

The district court did not abuse that discretion here. While other witnesses mentioned Bland during their depositions, all of the discussion about Bland occurred in connection with the 2013 audit. These references to Bland did not provide notice to General Dynamics that Holmes might rely on Bland as a witness to establish her claims, or what the subject of Bland's testimony would be. We have held that a district court's order striking a declaration under very similar circumstances does not constitute error. *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 329–30 (4th Cir. 2011) (affirming an order striking a declaration from a witness whom others referenced in deposition testimony but whom the plaintiff did not disclose until after the defendant moved for summary judgment). So too here.

III.

We turn to Holmes's principal contention, that the district court erred in granting summary judgment to General Dynamics. The role of the district court at summary

6

judgment is "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In making that determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255 (citation omitted). Summary judgment is appropriate only when the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

Holmes's ADA claim turns on a threshold legal question: whether Holmes is "within the ADA's protected class." *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 (4th Cir. 2004). The ADA protects "qualified individual[s]" from discrimination on the basis of disability. 42 U.S.C. § 12112; *see Rohan*, 375 F.3d at 272. A qualified individual is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8).

Holmes's briefs could be read to suggest that her entitlement to ADA relief rests *solely* on whether she could perform the "essential functions of her job," regardless of safety requirements. But at oral argument, Holmes's counsel recognized that we must also consider her employer's valid safety requirements when analyzing her claims. Oral Arg. at 10:30–11:43.

This is so because the ADA simply does not mandate that a safety requirement be a part of the essential functions of a position for an employer to enforce it. Rather, as long as the requirement is valid, any employee who is categorically unable to comply — as Holmes and her doctors have consistently maintained that she is — will "not be considered [a] 'qualified'" individual for ADA purposes. EEOC, *Applying Performance and Conduct*

7

*Standards to Employees with Disabilities* (Sept. 3, 2008), https://www.eeoc.gov/laws/guidance/applying-performance-and-conduct-standards-employees-disabilities (hereinafter "EEOC Guidance") ("Employers may require employees to wear certain articles of clothing to protect themselves, coworkers, or the public.").

As the EEOC has explained, "[i]f an individual with a disability cannot comply with a dress code," including a requirement that employees wear safety equipment, that individual will not be qualified for ADA purposes. *Id.* Because an "employer may still require compliance" with a valid safety equipment requirement even when an employee "cannot meet [a] dress code because of a disability," *id.*, an employee's inability to comply with such a requirement will render that employee unqualified.

Holmes does not contend that the company's steel-toed shoe requirement is not a valid safety requirement. Nor could she — as the district court explained, the record is replete with facts justifying the requirement. The record shows that at least one employee was injured while failing to wear protective footwear. An employee injury of this kind could cost the company production time and lead to increased workers' compensation costs.

This distinguishes this case from those in which the parties disagree as to the validity or necessity of a safety requirement. Because Holmes does not dispute the validity of the steel-toed shoe requirement and because the parties agree that Holmes cannot comply with it, the district court correctly held that she is not a "qualified individual" and thus is not entitled to ADA relief.

8

Holmes's principal contrary argument is that she successfully performed her job for more than a decade without wearing steel-toed shoes. For purposes of this appeal we accept this as true, but it does not follow that she is therefore a qualified individual for ADA purposes. Just because an employee has performed her job for an extended period of time without injury does not mean that the employee has performed her job *safely* or that she could continue to perform her job without risking injury to herself or others. A seatbelt is no less necessary to a driver's safety because she has driven without a seatbelt in the past. To hold otherwise would effectively estop a company from enacting and enforcing new, necessary, job-related safety requirements.

Nor does Holmes's prior work without steel-toed shoes establish, as her counsel contended at oral argument, that a total exemption from the steel-toed shoe requirement constitutes a reasonable accommodation under the ADA. *See* Oral Arg. at 10:30–11:43. Holding an exemption from an admittedly valid safety requirement represents a reasonable accommodation simply cannot be squared with an employer's right to "require compliance" with such a requirement even when an employee cannot meet the requirement because of a disability. *See* EEOC Guidance at F., Example 45. If exemptions from valid safety policies were required as ADA accommodations, it is unclear under what circumstances an employer could *ever* enforce a valid safety policy.

Holmes's inability to comply with the steel-toed shoe requirement thus means that she is not a "qualified individual" protected by the ADA. The district court did not err in rejecting her contrary contentions and granting summary judgment to her employer.

IV.

For all of these reasons, the judgment of the district court is

*AFFIRMED*.